William B. Federman
Federman & Sherwood
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560

*Proposed Liaison Counsel for the Class*

*[Additional counsel appear on signature page]*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELO VENTRILLO JR., Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No.: 5:23-CV-01019-F |
| COREY SCHOENROCK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No.: 5:24-CV-00012-F |

[Caption continues on next page.]

1

| JOSEPH MINARIK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No.: 5:24-CV-00014-J |
|---|---|

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF JOSEPH MINARIK FOR THE CONSOLIDATION OF RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

Joseph Minarik ("Movant") respectfully submits this Memorandum of Law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1)    consolidating the related actions;

(2)    appointing Movant as Lead Plaintiff for all persons other than Defendants who purchased the securities of Paycom Software, Inc. ("Paycom" or the "Company") between February 9, 2022 through November 1, 2023 (the "Class Period")[1] and those who

---

[1] The action *Ventrillo et al. v. Paycom Software, Inc. et al.,* No. 5:23-CV-01019-F ("*Ventrillo* Action") has a class period of between May 3, 2023 and November 1, 2023. The action *Schoenrock v. Paycom Software, Inc. et al.*, No. 5:24-CV-00012-F ("*Schoenrock* Action") has a class period of between February 9, 2022 and November 1, 2023. The action *Minarik v. Paycom Software, Inc. et al.*, Case No. 5:24-CV-00014-J ("*Minarik* Action") has a class period of May 3, 2023 and November 1, 2023. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-114 (E.D.N.Y. 2012) (court

2

purchased Paycom call options or sold put options during the Class Period, including any Paycom common stock purchased or otherwise acquired in connection with the exercise of such options, seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class"); and

(3)   appointing The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel and Federman & Sherwood ("Federman") as Liaison Counsel for the Class.

## CLAIMS ASSERTED

This action was commenced on November 10, 2023 by Rosen and Federman in the United States District Court for the Western District of Oklahoma against Defendants alleging claims under §§ 10(b) and 20(a) of the Exchange Act. That same day, a PSLRA early notice advising potential Class members of, *inter alia*, the claims alleged in the action and the 60-day deadline for Class members to move to be appointed as lead plaintiff was issued. A copy of the early notice is attached as Exhibit 1 to the Declaration of William B. Federman filed herewith ("Federman Decl." or "Federman Declaration").

The complaints allege that the Defendants' statements during the Class Period were false and misleading and omitted to state material adverse facts. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Paycom's Beti product led to cannibalization of the Company's services and revenues; (2) Paycom knew but failed to disclose that Beti was leading to cannibalization of the Company's services and revenues, and failed to warn of cannibalization as a general risk; (3) As a result of

---

favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

cannibalization of revenue, Paycom missed its expected 3Q23 revenue and would have to revise its expected 2023 Revenues; (3) the cannibalization issue resulted in projected 2024 year-over-year revenue growth to between 10% and 12%, well below expectations; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

Paycom is an online payroll and cloud-based human capital management ("HCM") software provider.

On February 8, 2022, after the close of trading, Paycom issued a press release and conducted a conference call announcing its fourth quarter and fiscal 2021 financial results for the period ended December 31, 2021 ("4Q21" and "FY21"). In addition to reporting 4Q21 "[r]evenues of $285.0 million," representing a "29.0% [increase] year-over-year," along with "GAAP net income of $48.7 million,"[2] the release provided financial guidance for the Company's first quarter 2022 ending March 31, 2022 ("1Q22"), and stated that Paycom then expected "[t]otal [r]evenues in the range of $342 million to $344 million" and "[a]djusted EBITDA in the range of $161 million to $163 million." For the fiscal year ended December 31, 2022 ("FY22"), Paycom stated that it then expected "[t]otal [r]evenues in the range of $1.314 billion to $1.316 billion" and "[a]djusted EBITDA in the range of $524 million to $526 million."

The market price of Paycom securities increased on these positive statements, closing on February 9, 2022 at $363.20 per share, on unusually high volume of more than

---

[2] "GAAP" means Generally Accepted Accounting Principles.

1.2 million shares trading, or more than twice the average daily volume over the preceding ten trading days.

On February 16, 2023, the Company filed its annual report on Form 10-K for the period ended December 31, 2022 (the "2022 Annual Report"). The 2022 Annual Report omitted any discussion regarding Beti and cannibalization of services and revenues.

On May 2, 2023, after market hours, the Company held its Earnings Call for the period ended March 31, 2023 ("the 1Q23 Earnings Call"). On the 1Q23 Earnings Call, Defendant Boelte stated "[f]or fiscal 2023, we are raising our outlook and now expect revenue in the range of $1.713 billion to $1.715 billion or approximately 25% year-over-year growth at the midpoint of the range."

On the 1Q23 Earnings Call, Defendant Richison extolled the purported benefits of Beti. He noted that Beti "continues to be a key differentiator in the market with Employee Self Service Payroll continuing to drive strong client additions. The industry transformation to more efficient HCM and payroll processes is accelerating. And now with Beti, payroll processes can be automated to deliver perfect payroll."

On May 4, 2023, Paycom filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2023 (the "1Q23 Report"). Attached to the 1Q23 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Richison and Boelte attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

The 1Q23 Report contained the following statements regarding the Company's growth outlook. First, the 1Q23 Report stated that Paycom has "historically generated the majority of our revenues from our payroll applications, although our revenue mix has evolved and will continue to evolve as we develop and add new non-payroll applications to our solution." The 1Q23 Report went on to state that "in 2021, we launched our industry-first Beti technology, which further automates and streamlines the payroll process by empowering employees to do their own payroll."

On August 3, 2023, Paycom filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2023 (the "2Q23 Report"). Like the 1Q23 Report and the 2022 Annual Report, the 2Q23 Report omitted that Beti was cannibalizing the Company's services and revenues.

The truth emerged on October 31, 2023 when, after market hours, Paycom filed with the SEC a current report on Form 8-K announcing its financial results for the period ended September 30, 2023 ("3Q23"). That same day, also after market hours, Defendants Richison and Boelte participated in the Company's Third Quarter of 2023 ("3Q23") earnings call (the "3Q23 Earnings Call").  On the 3Q23 Earnings Call, Defendants shocked the market with the announcement that Beti was cannibalizing a portion of the Company's services and revenues, which led it to revise its guidance. This admission led the Company to miss its expected revenues for 3Q23. For 3Q23, the Company reported revenue of $406.3 million, lower than its prior projection of $410-$412 million.

The cannibalization of services and revenues caused the Company to lower its projected 2023 revenues from the previously projected range of $1.715-$1.717 billion. On

5

the 3Q23 Earnings Call, Defendant Boelte stated "[w]ith our Q3 results and our Q4 guidance, we now expect fiscal 2023 revenues to be in the range of $1.679 billion to $1.684 billion or approximately 22% year-over-year growth at the midpoint of the range." As Defendant Boelte admitted, the Company knew or should have known that Beti would lead to cannibalization of services revenue. He stated that "[w]ith 10 months of data from increased Beti usage, we are incorporating the impact our clients' ROI achievement has on our model."

On this news, the price of Paycom stock plunged $94.28 per share, or 38.38%, to close at $150.69 per share on November 1, 2023, on unusually heavy trading volume.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT
### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

6

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Each of the above-captioned related actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by substantially similar Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa) has either filed the complaint or made a motion in response to a notice;
(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

7

As set forth below, Movant satisfies the above criteria, has the largest financial interest of any movants in this litigation, and therefore is the most adequate and should be appointed as Lead Plaintiff.

### A. Movant Is Willing to Serve as Class Representative

Movant timely filed the instant motion in response to a PSLRA early notice, and filed herewith a PSLRA certification attesting that Movant is willing to serve as representative of the Class and is willing to provide testimony at deposition and trial, if necessary. *See* Federman Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as lead plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group . . . that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA does not specify precisely how to calculate the "largest financial interest," the movants' approximate losses suffered in connection with the purchases of Paycom Securities is the best measure. *Richardson v. TVIA, Inc.*, 2007 WL 1129344 at * 4 (N.D. Cal. Apr. 16, 2007) (citing cases). Movant lost approximately $1,231,553.48 in connection with his purchases of Paycom securities. *See* Federman Decl., Ex. 3 (Movant's Loss Chart).

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the

8

requirements of Rule 23 of the Federal Rules of Civil Procedure." Federal Rule of Civil Procedure Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that movants satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant satisfies the requirements of Rule 23 is sufficient. *Cavanaugh*, 306 F.3d at 730-31. At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus…" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead plaintiff moves for class certification." *Richardson*, 2007 WL 1129344, at * 4 (citing *Cavanaugh*, 306 F.3d at 730).

Movant fulfills all of the pertinent requirements of Rule 23. Movant's claims share substantially similar questions of law and fact with the claims of the members of the Class, and Movant's claims are typical of the members of the Class. Movant and all members of the Class allege that Defendants violated the Exchange Act by publicly disseminating false and misleading statements about Paycom and its business. Movant, as did all of the members of the Class, purchased Paycom securities at prices artificially inflated due to Defendants' misrepresentations and omissions, and were damaged thereby. These shared

9

claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the Class.

Thus, the close alignment of interests between Movant and other Class members, and Movant's desire to prosecute this action on behalf of the Class, provides ample reason to appoint Movant as Lead Plaintiff.

### D. Movant Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movant's ability and desire to fairly and adequately represent the Class has been discussed above. Further, Movant is a sophisticated investor who has been investing since the late 1990's. Movant possesses a bachelor's degree in Computer Science from the University of Michigan and is now an executive at a datacenter company.

Movant is not aware of any unique defenses that Defendants could raise against Movant that would render Movant inadequate to represent the Class. Accordingly, the Court should appoint Movant as Lead Plaintiff for the Class.

10

### III. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the lead plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen as Lead Counsel and Federman as Liaison Counsel. Rosen and Federman initiated this action and the firms have been actively researching the Class's and the Movant's claims – reviewing publicly available financial and other documents and gathering information in support of the claims against the Defendants. Rosen has prosecuted securities fraud class actions and has obtained substantial recoveries on behalf of investors. Furthermore, the firm is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in numerous courts throughout the country. The resumes of the firms are attached as Exhibits 4 and 5 to the Federman Declaration.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of counsel, the members of the Class will receive the best legal representation available.

### IV. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff for the

Class; (3) approving Rosen Lead Counsel and Federman as Liaison Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: January 9, 2024

Respectfully submitted,

_____

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

*Proposed Liaison Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
         pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*