**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANGELO VENTRILLO JR., Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No. 5:23-cv-01019-F<br><br>**RESPONSE IN SUPPORT OF MOTION OF AMY FISHER TO CONSOLIDATE THE RELATED ACTIONS, APPOINT LEAD PLAINTIFF AND APPROVE SELECTION OF LEAD COUNSEL** |
| COREY SCHOENROCK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No. 5:24-cv-00012-F |
| JOSEPH MINARIK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No. 5:24-cv-00014-F |
| CHRIS H. CALOTO, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:24-cv-00019-F |

|  | Plaintiff, |
|---|---|
| v. | |
| PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, | |
|  | Defendants. |

011216-11/2436008 V3

## I.     INTRODUCTION

Five motions seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") remain pending before the Court. Under the PSLRA, the Courts is to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As set forth herein, Ms. Fisher is the only movant that satisfies both of these elements.

| Movant | Reported Loss | Rule 23 |
|---|---|---|
| ~~Dr. Calvin E. Mein~~ | ~~$1,659,500.00~~ | ~~Atypical: only traded options~~ |
| ~~Joseph Minarik~~ | ~~$1,231,553.48~~ | ~~Atypical: only traded options~~ |
| Amy Fisher | $348,693.47 | |
| ~~Michigan Laborers Pension Fund~~ | ~~$321,651.05~~ | ~~Inadequate: no real losses/ standing~~ |
| Brenda Herbert | $39,800.00 | |

Though two other movants, Drs. Mein and Minarik, purport to have larger financial interests than Ms. Fisher, the Court cannot appoint either as Lead Plaintiff because both are textbook atypical movants. As conceded in their opening papers, Drs. Mein and Minarik suffered all their alleged losses in connection with sales of Paycom put options.[1] But it is well established that investors with losses exclusively derived from options cannot

---

[1] While Dr. Mein apparently purchased some call options during the Class Period, Dr. Mein does not claim to have suffered losses on these transactions. ECF No. 18-2.

011216-11/2436008 V3

meet their *prima facie* Rule 23 requirements.[2]  Indeed, courts consistently reject lead plaintiff movants like Minarik and Mein who suffered all their losses in options. *See, e.g., Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class"); *Applestein v. Medivation Inc.*, No. C 10-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("because Slotkin traded only in options, the court holds that Slotkin should not be appointed lead [plaintiff]"). *See also infra* at § II.A.1. Accordingly, Minarik and Mein must be disqualified here.

Ms. Fisher, who traded exclusively in Paycom common stock, does not suffer from the same impediments as Drs. Mein and Minarik and has the largest financial interest of any qualified movant during the proper alleged Class Period—May 3, 2023 and November 1, 2023, inclusive—as set forth in the above-captioned *Ventrillo* and *Minarik* actions. Additionally, Ms. Fisher also handily satisfies the prima facie Rule 23 typicality and adequacy requirements. Ms. Fisher is typical of other Class members because she bought Paycom securities during the proper Class Period and was significantly harmed by the same alleged misstatements and omissions as other Class members. Ms. Fisher has no conflicts

---

[2] When an investor sells a put option to a buyer, the seller (here, Dr. Mein or Mr. Minarik) has the obligation to buy the underlying stock or asset at the strike price when the option is exercised by the buyer. *See* https://corporatefinanceinstitute.com/resources/derivatives/put-option. Since all of the trades upon which Dr. Mein and Mr. Minarik claim losses were dependent on whether the options were exercised by buyers, their trading present serious issues of atypicality that would only harm the proposed Class if either was appointed. *See, e.g., Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *5-6 (N.D. Cal. June 10, 2021) (options holder was atypical because he could only show reliance in connection with put option sales, not the acquisition of common stock after options were exercised).

011216-11/2436008 V3

with other Class members. And Ms. Fisher readily meets the PSLRA's prima facie adequacy requirements. *See* Fisher Cert. (ECF No. 29-1).

One competing movant, Michigan Laborers, may attempt to argue that it actually maintains a larger financial interest than Ms. Fisher. But such a claim would be predicated upon Michigan Laborers' advancement of an artificially elongated class period pled by its counsel of record in the *Calato* complaint and subsequently adopted in the *Schoenrock* complaint. But the *Calato* and *Schoenrock* complaints provide no support for lengthening the alleged class period by nearly fifteen months. Nor could they.

The concealed truth in this litigation—which all complaints allege was revealed to the market on October 31, 2023 when Defendants announced Paycom's 3Q 2023 financial results for the period ended September 30, 2023—is that throughout ***2023,*** Paycom and its most senior executives knew but failed to disclose that Beti product was leading to cannibalization of the Company's services and revenues. *E.g.*, *Ventrillo* Compl. ¶¶ 44-48; *Caloto* Compl. ¶¶ 38-39. Consequently, Defendants' statements concerning Paycom's revenue estimates in May and August for the later half of 2023 and projected 2024 year-over-year revenue growth were misleading, as Defendants knew or should have known expected revenues for 3Q23 could not be met and that 2024 guidance would need to be downwardly revised. *E.g.*, *Ventrillo* Compl. ¶ 41; *Caloto* Compl. ¶ 39 . Thus, *Calato*'s and *Schoenrock*'s notion that Defendants' alleged fraud commenced on February 8, 2022—well before Defendants had seen the deleterious effects of Beti in 2023 and understood the need to moderate upside to Paycom's second-half-of-2023 and full-year-2024 guidance model—conflicts with the central theory of the fraud in this litigation. Accordingly,

011216-11/2436008 V3

Michigan Laborers' manufactured and bloated class period should be rejected. Having purchased all of its Paycom shares its 2022, Michigan Laborers in truth has no genuine financial interest in the litigation. It thus cannot serve as lead plaintiff.

In light of the foregoing, Ms. Fisher is entitled to the PSLRA's "strong" presumption of being appointed Lead Plaintiff. Once this strong presumption attaches, the Court must focus its attention on the presumptive lead plaintiff alone and not conduct a beauty contest among the remaining movants. To rebut the presumption in Ms. Fisher's favor, competing movants must offer actual "proof," not mere speculation, that Ms. Fisher somehow does not satisfy Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The competing movants can offer no such proof.

For these reasons and those discussed further below, Ms. Fisher's motion for appointment as Lead Plaintiff and approval of Lead and Liaison Counsel should be granted, and all competing motions for lead plaintiff should be denied, except to the extent they seek consolidation of the related cases.

## II.    ARGUMENT

### A.    The Court Should Appoint Ms. Fisher As Lead Plaintiff As She Has The Largest Financial Interest of Any Qualified Movant and Satisfies Rule 23

Under the PSLRA, a "strong" presumption in favor of being appointed Lead Plaintiff goes to the movant who suffered the largest financial interest and satisfies Fed. R. Civ. P. 23. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, the movant who meets both criteria is undeniably Ms. Fisher.

- 4 -

### 1.   Ms. Fisher Has the Largest Financial Interest of Any Qualified Movant.

Ms. Fisher suffered approximately $348,693.47 in losses in connection with Defendants' fraudulent statements and omissions. *See* Fisher Transactions and Loss Analysis (ECF Nos. 29-1 & 29-2). Two other movants, Drs. Mein and Minarik, claim in their opening motions to have a larger financial interest that Ms. Fisher. But Drs. Mein and Minarik are atypical movants who, given their exclusive dealing in Paycom options rather than common stock, cannot satisfy their prima facie Rule 23 requirements. They are thus disqualified from serving as lead plaintiffs in this case.

To be the presumptive lead plaintiff, a movant, in addition to having incurred the greatest financial loss, must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Patel*, 549 F.Supp.3d at 565 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc) (internal quotation marks omitted)). In the context of a lead plaintiff analysis, Rule 23's typicality and adequacy prongs are generally the most relevant factors.

The Tenth Circuit Court of Appeals has not addressed whether movants who invest primarily or wholly in options can qualify as lead plaintiffs. Nevertheless, many district courts have held that movants "who invest only in options are atypical of a class comprising common shareholders," particularly where, as is here, a substantial portion of a lead-plaintiff movant's alleged losses are based on options. *See, e.g., Patel*, 549 F. Supp. 3d at 566 (collecting case examples). This is because appointing options traders like Movants Mein and Minarik as lead plaintiffs may well "'introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest

rates,'" *Troganesian v. Sw. Airlines Co.*, No. 4:23-CV-00115, 2023 WL 4565464, at *5 (S.D. Tex. July 15, 2023), and may be also subject to unique defenses.[3] As such, many district courts—including two in the Tenth Circuit—have declined to appoint as lead plaintiffs movants whose losses generally relate to options (as opposed to common stock) trades." *See, e.g.*, *Jaramillo v. Dish Network Corp.*, No. 23-CV-00734-GPG-SKC, 2023 WL 5312062, at *3 (D. Colo. Aug. 16, 2023); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 2:20-cv-00368-JNP-DBP, 2021 WL 913934, at *4–5 (D. Utah Mar. 10, 2021) (determining that movant who traded exclusively in call options was subject to unique defenses that rendered him incapable of adequately representing the proposed class).

Further troubling is the fact is that the bulk, if not the entirety of Dr. Minarik and Dr. Mein's alleged losses appear to arise from options that ultimately *required* these movants to acquire PAYC common stock via a forced contractual assignment rather than voluntary purchases on the open market. *See* Mein PSLRA Cert. and Loss Charts (ECF Nos. 18-1 & 18-2); Minarik PSLRA Cert. and Loss Charts (ECF Nos. 21-2 & 21-3).[4] In *Jaramillo*, this district faced the exact same lead plaintiff issue. 2023 WL 5312062, at *3. The *Jaramillo* court found that parties "who only acquire common stock involuntarily

---

[3] To prevent further attack on these fact-specific grounds, Dr. Minarik filed an incomplete PSLRA certification and transaction information that did not disclose details about his "option assignments," including the nature and terms of the option involved, the expiration date, etc. *See* ECF Nos. 21-2 & 21-3).

[4] For example, Dr. Mein claims losses from purchasing 1000 PAYC common stock on March 17, 2023 at $290 per share. (ECF No. 18-1, at 3). As indicated on the same page, this purchase arose from a February 22, 2023 transaction where Mein "sold to open" a put option, under which the option holder could require Mein to buy PAYC common stock at a $290 per-share price at any time up through March 17, 2023. (Publicly available information shows on March 17, 2023, the closing price for buying PAYC was only $278.)

- 6 -

when put options they have written are exercised—are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions." *Id.* at 5. As the court explained:

> While put option sellers and common stock purchasers may rely on the same general assumption that the underlying stock price will rise (or at least not decrease), there are also significant differences that draw into question the adequacy of put sellers as class representatives. For example, put sellers operate on different time horizons than do common stock purchasers. Puts are time-limited; a put seller bets that a company's stock value will not decline to a specified strike price within the life of an option. Common stock purchasers do not operate under the same limitations.

*Id.* (internal citations omitted). The court thus concluded that the movant with the most common stock losses was the most capable of adequately representing the class. *Id.* This Court should do the same—i.e., disqualify Dr. Mein and Dr. Minarik, and appoint Ms. Fisher, who does not suffer from any Rule 23 defects, as lead plaintiff.[5] *See infra* at 11.

### 2.     The Court Should Reject Any Movant-Driven Effort to Artificially Elongate the Class Period to Begin Before May 3, 2023.

One other competing movant, Michigan Laborers, may attempt to argue that it actually maintains a larger financial interest than Ms. Fisher. But such a claim would be predicated upon Michigan Laborers' advancement of an artificially elongated class period

---

[5] *See also* Di Scala, 2020 U.S. Dist. LEXIS 242969, at *10 (declining to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy… Undoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification."); Cook, 2019 U.S. Dist. LEXIS 51962, at *7 (a shareholder that purchases securities other than the company's common stock "introduce[s] factual issues irrelevant to the stockholder class members" and ultimately "subject[s] the class to unique defenses, causing unnecessary conflicts.").

beginning on February 9, 2022—nearly 15 months before the May 3, 2023 start of the originally pled, six-month Class Period. This artificial class period was first conceived by Michigan Laborers' counsel in the *Calato* complaint and subsequently adopted in the *Schoenrock* complaint (a party that ultimately did not move for lead plaintiff). But as explained below, no movant or named plaintiff—Michigan Laborers or otherwise—has pled a colorable legal theory that can justify starting the class period before May 3, 2023. The Court should reject all claims of financial losses from securities purchased before the originally pled Class Period—May 3, 2023 to November 1, 2023, *see* Compl. (ECF No. 1), *Ventrillo v. Paycom Software, Inc.*, No. 23-cv-1019F (Nov. 10, 2023).

For purposes of appointing a lead plaintiff, courts frequently favor using the longest or the most inclusive class period to measure putative class members' financial interests. *See Gelt Trading*, 2021 WL 913934, at *3; *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv00367-SI, 2014 U.S. Dist. LEXIS 140766, at *31-32, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (collecting cases). "There is a risk, however, to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010).

As a result, courts have developed "two different standards for deciding whether to accept a shorter proposed class period at the lead plaintiff selection stage." *Gelt Trading*, 2021 WL 913934, at *3. "Some courts have ruled that the most inclusive class period should not be rejected unless the factual allegations supporting the longest class period are 'obviously frivolous.'" *Id*. (quoting *In re BP*, 758 F. Supp. 2d at 434). Others use a well-

- 8 -

familiar plausibility standard identical to the one used in evaluating motions under Rule 12(b). *Id.* The Court need not decide which of these two tests to employ. Under either standard, Michigan Laborers has failed to support its proposed class period.

Here, the concealed truth in this litigation, which all complaints allege was revealed to the market on October 31, 2023 when Defendants announced Paycom's 3Q 2023 financial results for the period ended September 30, 2023, is that throughout ***2023*** Paycom and its most senior executives knew, but failed to disclose, that Beti product was eliminating certain billable items and leading to cannibalization of the Company's services and revenues. *E.g.*, *Ventrillo* Compl. ¶ 48; *Caloto* Compl. ¶ 39. Consequently, Defendants' statements concerning Paycom's revenue estimates for the later half of 2023 and projected 2024 year-over-year revenue growth were misleading, as Defendants knew both figures would ultimately need to be downwardly revised. *See, e.g.*, *Caloto* Compl. ¶ 39 (disclosing how new guidance "incorporate[ed]" data on Beti impact from prior 10 months into guidance models). Thus, *Calato*'s and *Schoenrock*'s notion that Defendants' alleged fraud commenced on February 8, 2022—well before Defendants had seen the deleterious effects of Beti in 2023 and understood the need to moderate upside to guidance for the later half of 2023 and fully year of 2024, *see, e.g.*, *id.*) conflicts with the central theory of the fraud in this litigation.

*Calato* and *Schoenrock's* class period is also belied by the chief scienter allegations common to all four complaints, in which Plaintiffs highlight that Paycom disclosed the truth on October 31, 2023 after incorporating "10 months of data from increased Beti usage"—i.e., data from January 1, 2023 onward—into its financial models. *E.g.*, *Ventrillo*

011216-11/2436008 V3

Compl. ¶¶ 44-48; *Caloto* Compl. ¶¶ 38-39. For the year earlier however, on February 2, 2022, there is no allegation in the *Ventrillo* and *Minarik* complaints that Defendants had such data from which to form beliefs about how well the company was set up to deliver strong, high-margin revenue growth for years to come. Indeed, even the cleverly crafted *Caloto* and *Schoenrock* complaints include no allegations suggesting that Defendants knew or should have been aware Beti would cannibalize and outstrip other revenues as early as February 9, 2022 (or that Defendants' statements regarding revenues were otherwise false or misleading).

Finally, the complete mismatch between the new false and misleading statements in *Calato* and *Schoenrock* and the alleged corrective disclosure event further illustrates that the elongated class period is frivolous. *Caloto* and *Schoenrock* challenge Defendants' statements concerning Paycom's 2021 and 2022 financial results. *Caloto* Compl. ¶¶ 15-30; *Schoenrock* Compl. ¶¶ 20-35 . The alleged corrective disclosures on October 31, 2023, however, say nothing about Paycom's 2021 and 2022 financial results; rather, the disclosures exclusively concern Paycom's reported 3Q**23** financial results and **2024** outlook. *Caloto* Compl. ¶ 38; *Schoenrock* Compl. ¶ 43  And *Calato* and *Schoenrock* provide no support that the market understood the news that Paycom's 3Q23 financial results and revision of its 2024 guidance revealed that, in fact, Paycom's 2021 and 2022 reported financial results were false and misleading. *See Caloto* Compl. ¶ 40 (discussing market reaction to news);  *Schoenrock* Compl. ¶ 45 (same).

In sum, there is presently no colorable theory of liability for a class period beginning before the Class Period beginning on May 3, 2023. Accordingly, the Court should reject

any Class Period beginning before May 3, 2023 in determining which movant has the largest financial interest in the litigation, and instead should assess each movant's losses under the May 3 to November 1, 2023 Class Period adopted by the first and last filed complaints.

Significantly, Michigan Laborers purchased its Paycom shares between February and November 2022. *See* Michigan Laborers' PSLRA Cert. and Transactions (ECF No. 30-1, at 11-13). Having failed to purchase Paycom shares during a plausible Class Period based on the Complaints as written, Michigan Laborers has no genuine financial interest in the litigation and arguably no standing to pursue any claims.

### 3. Ms. Fisher Readily Satisfies the Prima Facie Requirements of Federal Rule of Civil Procedure 23.

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). As discussed above, at this stage, courts focus on the typicality and adequacy requirements. *See Scuderi v. Mammoth Energy Servs., Inc.*, No. CIV-19-522-SLP, 2019 WL 4397340 at *3, n.6 (W.D. Okla. Sept. 13, 2019) (citing *In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 658 (D. Colo. 2000)).

Ms. Fisher satisfies the typicality requirement as she seeks to represent a class of similarly situated purchasers of Paycom securities and suffered losses as a result of Defendants' alleged misconduct. *See, Mammoth Energy Servs., Inc.,* 2019 WL 4397340, at *3 (citing *Wolfe v. AspenBio Pharma, Inc.* 275 F.R.D. 625, 628 (D. Colo. 2011)).

011216-11/2436008 V3

Ms. Fisher similarly satisfies the adequacy requirement as her interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between Movant and the other Class members, but Ms. Fisher has a significant, compelling interest in prosecuting the Action to a successful conclusion based upon her very large financial losses suffered as a result of the wrongful conduct alleged in the Action. Her motivation, combined with her identical interest with the members of the Class, demonstrates that she will vigorously pursue the interests of the Class. In addition, Movant has selected a law firm to represent her and the Class that is highly experienced in prosecuting securities class actions. *See In re Ribozyme*, 192 F.R.D. at 659.

Because of Ms. Fisher's common interests with the Class members, it is clear she is motivated and able to vigorously pursue this Action, she has selected competent counsel, and she is adequate. Thus, Ms. Fisher satisfies the requirements of Rule 23(a)(3) and (4).

**B.     There Is No Proof to Rebut the Strong Presumption in Favor of Ms. Fisher**

The lead plaintiff process is not a "beauty contest"—the *qualified* movant with the largest financial interest (here, Ms. Fisher) is the most adequate plaintiff, period. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (once a court "determines which plaintiff has the largest stake, the court must appoint that plaintiff as lead unless it finds that he does not satisfy the typicality or adequacy requirements"); *see also Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, at *2 (S.D.N.Y. June 21, 2018) ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job"); *In re Cendant Corp. Litig.*, 264 F.3d 201,

- 12 -

268 (3d Cir. 2001) ("once the [adequacy] presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class ..."). The only way for competing movants to rebut the PSLRA's "strong" presumption in favor of appointing Ms. Fisher as Lead Plaintiff is to present actual "proof," not mere speculation, that Ms. Fisher somehow does not satisfy Rule 23. See 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). *Cf. In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22-CV-3125 (LDH) (RLM), 2022 WL 4329471, at *8-9 (E.D.N.Y. Sept. 19, 2022) ("minor errors" do not defeat adequacy). There is no proof of any Rule 23 impediment against Ms. Fisher here. Accordingly, the PSLRA requires that Ms. Fisher be appointed as lead plaintiff for this case.

## III.    CONCLUSION

For all of the foregoing reasons, Ms. Fisher respectfully requests that this Court enter an order: (1) consolidating the Related Actions; (2) appointing her to serve as Lead Plaintiff in this Action; and (3) approving her selection of Lead and Liaison Counsel for the Class.

011216-11/2436008 V3

Dated:  January 30, 2024                    Respectfully Submitted,


By     */s/ William B. Federman*    
    WILLIAM B. FEDERMAN, OBA #2853
William B. Federman, OBA #2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com

Reed Kathrein (*pro hac vice* forthcoming)
Lucas E. Gilmore (*pro hac vice* forthcoming)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Movant Amy Fisher*

011216-11/2436008 V3