UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANGELO VENTRILLO JR., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 5:23-cv-01019-F |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| PAYCOM SOFTWARE, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) ) | |
| | ) | |
| COREY SCHOENROCK, Individually and on Behalf of All others Similarly Situated, | ) ) | No: 5:24-cv-00012-F |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| PAYCOM SOFTWARE, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

**MICHIGAN LABORERS' PENSION FUND'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**

4875-2114-1153.v1

| | |
|---|---|
| JOSEPH MINARIK, Individually and on behalf of all others similarly situated, | ) No: 5:24-cv-00014-F |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PAYCOM SOFTWARE, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| CHRIS H. CALOTO, Individually and on Behalf of All Others Similarly Situated, | ) No: 5:24-cv-00019-F |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PAYCOM SOFTWARE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

4875-2114-1153.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

  A.   Dr. Mein and Mr. Minarik Are Both Atypical Traders Whose
       Financial Interests Derive Entirely From Private (Non-Open-Market)
       Options Transactions ................................................................................. 2

  B.   Ms. Fisher's Lead Plaintiff Application Suffers from Fatal Defects ............ 6

       1.   Ms. Fisher Made Money on Her Paycom Transactions During
            the Properly Alleged Class Period ..................................................... 6

       2.   Ms. Fisher Has Failed to Make a *Prima Facie* Showing of
            Typicality and Adequacy ................................................................. 10

  C.   The Pension Fund Should Be Appointed Lead Plaintiff ............................ 13

III.  CONCLUSION ................................................................................................. 15

4875-2114-1153.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005)..................................................................5

*Applestein v. Medivation Inc.*,
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ............................................................5

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019)...........................................................2, 10

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
2023 WL 6458930 (S.D.N.Y. Oct 4, 2023)..................................................................8

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
2020 WL 2614703 (S.D.N.Y. May 22, 2020) ............................................................11

*Clair v. DeLuca*,
232 F.R.D. 219 (W.D. Pa. 2005) ...............................................................................10

*Cook v. Allergan*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) .........................................................3, 5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) .............................................................4

*Doshi v. Gen. Cable*,
2017 WL 5178673 (E.D. Ky. Nov. 7, 2017)................................................................8

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ............................................................9

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
2021 WL 913934 (D. Utah Mar. 10, 2021) .................................................................4

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y. 2007)................................................................................8

*In re The Boeing Co. Aircraft Sec. Litig.*,
2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ..................................................11, 12, 13

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005)................................................................................8

4875-2114-1153.v1

**Page**

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
  209 F.R.D. 447 (C.D. Cal. 2002) ................................................................... 11

*In re Michaels Stores, Inc. Sec. Litig.*,
  2003 WL 27391238 (N.D. Tex. Oct. 24, 2003) ............................................. 12

*In re Priceline.com Inc.*,
  236 F.R.D. 89 (D. Conn. 2006) ....................................................................... 3

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. Aug. 9, 2019) ............................................... 5

*Jaramillo v. Dish Network Corp.*,
  2023 WL 5312062 (D. Colo. Aug. 16, 2023) ......................................... 1, 3, 4

*Karp v. Diebold Nixdorf, Inc.*,
  2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ............................................... 11

*Lifschitz v. Hexion Specialty Chems., Inc.*,
  2009 WL 734040 (S.D.N.Y. Mar. 18, 2009) ............................................... 12

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ............................................... 9

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ............................................... 5

*Patel v. Reata Pharm., Inc.*,
  549 F. Supp. 3d 559 (E.D. Tex. 2021) ........................................................... 4

*Perez v. HEXO Corp.*,
  2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ............................................... 11

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ................................................... 8

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
  566 F. Supp. 3d 712 (S.D. Tex. 2021) ...................................................... 2, 8, 9

*Teroganesian v. Sw. Airlines Co.*,
  2023 WL 4565464 (S.D. Tex. July 17, 2023) ................................................... 4

4875-2114-1153.v1

**Page**

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
   2021 WL 533518 (S.D. Cal. Feb. 12, 2021)................................................................. 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(2)(A)(iv) ............................................................................................ 13
   §78u-4(a)(3)(B) ................................................................................................... 2
   §78u-4(a)(3)(B)(iii) ........................................................................................... 13
   §78u-4(a)(3)(B)(iii)(I) ........................................................................................ 1
   §78u-4(a)(3)(B)(iii)(II) ...................................................................................... 14

28 U.S.C.
   §1746 ................................................................................................................ 11

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................ 1, 10, 11, 12
   Rule 23(a)(3) ....................................................................................................... 3

## I.    INTRODUCTION

Five class members filed motions seeking consolidation of the related actions, appointment as lead plaintiff, and approval of lead plaintiff's selection of counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) Dr. Calvin E. Mein; (2) Joseph Minarik; (3) Brenda Herbert; (4) Amy Fisher; and (5) Michigan Laborers' Pension Fund.  ECF 16, 19, 22, 27, 30.[1]  The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the person that: (1) "has the largest financial interest in the relief sought by the class"; *and* (2) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Of the five movants, only the Pension Fund satisfies both prongs of the PSLRA's requirements.

Despite facially claiming larger financial interests than the Pension Fund, Dr. Mein and Mr. Minarik cannot be appointed lead plaintiff because each acquired 100% of the Paycom Software, Inc. they claim losses on via assignments of shares related to their sales of put options.  Their "status as put option sellers (and the fact that they obtained [Paycom] common stock exclusively because the option purchasers exercised these options) raises typicality and adequacy concerns and subjects them to unique defenses that preclude their appointment."  *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at \*3 (D. Colo. Aug. 16, 2023).

While Ms. Fisher claims the next largest loss, she cannot be appointed lead plaintiff because: (1) Ms. Fisher's status as a net gainer and net seller disqualifies her from

---

[1]   All movants agree that the four above-captioned related securities class actions should be consolidated.

4875-2114-1153.v1

appointment as lead plaintiff (*see Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 718 (S.D. Tex. 2021)); and (2) she has provided virtually no information about herself (other than her very common name) ensuring that the Court and other class members have no way to evaluate her adequacy to serve as lead plaintiff (*see Camp v. Qualcomm Inc.*, 2019 WL 277360, at \*2-\*3 (S.D. Cal. Jan. 22, 2019)).

In contrast, the Pension Fund is a sophisticated institutional investor that suffered 100% of its losses on open-market stock transactions and is neither a net seller nor net gainer. As such, the Pension Fund is entitled to the PSLRA's "most adequate plaintiff" presumption. 15 U.S.C. §78u-4(a)(3)(B). Because no movant can provide proof to rebut the presumption, the Pension Fund's motion should be granted.

## II.    ARGUMENT

### A.    Dr. Mein and Mr. Minarik Are Both Atypical Traders Whose Financial Interests Derive Entirely From Private (Non-Open-Market) Options Transactions

Though Dr. Mein and Mr. Minarik facially claim larger losses than the Pension Fund, neither can be appointed as lead plaintiff because each of their claimed losses are based almost entirely on shares that they were contractually obligated to "purchase" at predetermined prices.[2] Indeed, all of both Dr. Mein and Mr. Minarik's stock acquired during

---

[2]    Based on his sworn Certification and loss chart, Dr. Mein claims more than $1.6 million in losses in connection with his obligation to purchase 11,000 shares of Paycom stock after he sold 110 put contracts. *See* ECF 18-2. Likewise, Mr. Minarik had a contractual obligation to purchase the 19,900 Paycom shares he claims losses on because those shares were assigned to him pursuant to the 200 put option contracts he sold. *See* ECF 21-3.

4875-2114-1153.v1

the class period resulted from being assigned Paycom stock pursuant to put option contracts they sold.[3]  This is disqualifying.

Lead plaintiff movants' "status as put option sellers (and the fact that they obtained [Paycom] common stock exclusively because the option purchasers exercised these options) raises typicality and adequacy concerns and subjects them to unique defenses that preclude their appointment." *Dish Network*, 2023 WL 5312062, at *3.  This is because "[p]arties who exclusively sell put options, or who only acquire common stock involuntarily when put options they have written are exercised – are simply differently situated from parties who engage in – and whose losses predominantly derive from – ordinary common-stock transactions." *Id.* at *5; *see Cook v. Allergan plc*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (refusing to appoint investor with largest financial interest where 60% of that movant's loss resulted from options trading and noting that movant "is not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)" and "very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict'").

---

[3]  "A put option 'gives the holder [(buyer)] the right to sell an asset at a certain price [(the strike price)] within a specific period of time.'" *In re Priceline.com Inc.*, 236 F.R.D. 89, 98 (D. Conn. 2006).  "Upon the sale of a put option, the seller, or writer, becomes obligated to purchase the asset at the strike price if the holder exercises the option." *Id.*  Each contract entitles the put buyer to "put" (or assign) 100 shares of stock to the put seller at the predetermined strike price.  *See* https://www.investopedia.com/terms/p/putoption.asp (accessed Jan. 28, 2024).  Unless otherwise noted, all emphasis is added and citations are omitted.

4875-2114-1153.v1

These issues surrounding options recently caused the court in *Dish Network* to find that, regardless of whether two put sellers like Dr. Mein and Mr. Minarik would otherwise be entitled to the PSLRA's most adequate plaintiff presumption, they were each precluded from being appointed as lead plaintiff because "there are also significant differences [between put sellers and common stock purchasers] that draw into question the adequacy of put sellers as class representatives." 2023 WL 5312062, at *5. Similarly, in *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021), the court found that an options trader was subject to unique defenses regarding both damages and loss causation that precluded his appointment (noting that comparing stock losses and options losses was "like 'comparing apples to oranges'").

To be clear, the issue is not whether put sellers are properly part of the class; rather, the issue is whether movants who acquire 100% of the shares they claim losses on via option assignments will adequately and typically represent the class without being subject to unique defenses. District courts around the country uniformly agree that movants who transact primarily in options ***do*** raise issues of adequacy and typicality and that those movants will be subject to unique defenses that preclude their appointment as lead plaintiff. *See Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464, at *5 (S.D. Tex. July 17, 2023) (refusing to appoint movant with largest financial interest who suffered all losses in connection with put options); *Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) (refusing to appoint movant with largest financial interest where majority of movant's losses related to options transactions and stock purchases related to those options transactions); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321

- 4 -

(S.D.N.Y. Dec. 28, 2020) (same); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. Aug. 9, 2019) (declining to appoint movant whose losses were entirely due to selling put options during the class period); *Allergan*, 2019 WL 1510894, at *2 (finding movant atypical where more than 60% of losses resulted from options trading); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (declining to appoint movants who traded "almost exclusively in put and call options," finding that their trading made them "atypical plaintiffs"); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) (where lead plaintiff movant traded only in "contracts for securities, not the securities themselves," the lead plaintiff movant "should not be appointed"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (finding options trader atypical and inadequate for lead plaintiff purposes, and noting absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action").

Similarly here, it was Dr. Mein and Mr. Minarik's contractual obligations – not the alleged fraud or reliance on the integrity of the market – that compelled them to purchase shares of Paycom common stock on days when those shares were usually trading on the open market at prices well below what Dr. Mein and Mr. Minarik were forced to pay for them.

4875-2114-1153.v1



In fact, Dr. Mein and Mr. Minarik each made ***no open market purchases*** of Paycom

common stock, introducing factual issues that are plainly different from those relevant to the

majority of class members who purchased Paycom common stock.  As such, Dr. Mein and

Mr. Minarik will not typically and adequately represent the class and cannot be appointed

lead plaintiff.

### B.    Ms. Fisher's Lead Plaintiff Application Suffers from Fatal Defects

#### 1.    Ms. Fisher Made Money on Her Paycom Transactions During the Properly Alleged Class Period

In her opening motion, Ms. Fisher claimed that the "*Caloto and Schoenrock*'s

Actions' elongated alleged class periods are not factually justified at this juncture and should

be disregarded for purposes of ruling on the instant motion."  ECF 28 at 2.  In contrast, all

4875-2114-1153.v1

four of the other competing movants accepted the allegations of the longest alleged class period and presented their losses in accord.  *See* ECF 17 at 1 n.1 (Dr. Mein accepting longest class period); 20 at 2 n.1 (Mr. Minarik accepting longest class period); 24-3 (Ms. Herbert's loss chart setting forth financial interest based on the longest class period); 30-1 (Pension Fund's loss chart setting forth financial interest based on the longest class period).  Ms. Fisher's curious maneuver raises the question: why was she the only movant to reject the use of the longest class period?  There is a simple answer: ***Ms. Fisher made money on her transactions in Paycom securities during the longest class period***, making her a net gainer and disqualifying her from appointment as lead plaintiff.

While Ms. Fisher claims a loss of $348,693 (*see* ECF 28 at 5), an evaluation of all of the transactions listed on her sworn Certification reveals that in the longest class period, Ms. Fisher actually sold 57 more shares than she purchased in her largest account and spent $7,975,069 purchasing Paycom stock while receiving $8,114,090 in proceeds from sales of Paycom stock, meaning that ***Ms. Fisher actually profited by $139,021***.  ECF 29-1 at 4, 5 of 5 (Ms. Fisher's Certification setting forth transactions in the *Schoenrock* and *Caloto* Actions).[4]

---

[4]    Ms. Fisher claims losses on two separate accounts.  Account one accounts for more than 99% of Ms. Fisher's total shares purchased and more than 99% of her funds expended on Paycom securities.  Even considering Ms. Fisher's two accounts combined, she spent $8,015,031 purchasing Paycom shares during the longest class period and took in proceeds of $8,114,090 from sales of Paycom shares during that period, meaning that she profited $99,059 in her two accounts combined during the longest class period, making her a net gainer regardless of whether account one is considered in isolation.

Ms. Fisher's status as a net seller and net gainer[5] in the longest class period precludes her appointment as lead plaintiff as courts regularly reject movants who are net sellers and net gainers. *Id.* at 719 ("In short, my determination that Ellis is a 'net seller' and a 'net gainer' disqualifies him from serving as lead plaintiff."); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *6 (S.D.N.Y. Oct 4, 2023) ("Clal's status as a 'net seller' and 'net gainer' during the Class Period subjects it to unique defenses that prevent Clal from adequately representing the class."); *Doshi v. Gen. Cable*, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) ("Courts regularly hold that plaintiffs who are net sellers and/or net gainers may be subject to unique defenses because they may have benefitted by selling pre-Class Period shares at allegedly inflated prices during the Class Period."); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("Marcus' status as a net seller and a net gainer during the Class Period weighs against Marcus' appointment as the lead plaintiff."); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 174 (W.D.N.Y. 2007) (Collecting cases and noting that "I agree with the rationale of those courts finding that net sellers and net gainers, such as Detroit Police & Fire, are ill-suited to serve as lead plaintiffs."); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("The Court, therefore, eliminates New Mexico PERA and Central States, the two net gainers and net sellers, from [movant group]."). This is because movants who are net sellers and net gainers "may have difficulty

---

[5]    "A 'net seller' is a party who sells more shares than he bought during the class period. 'A net gainer is a party who profited from the purchase and sale of a defendant's stock during the class period.'" *Apache*, 566 F. Supp. 3d at 718.

proving damages at trial and are subject to unique defenses that do not befall other class members" as a result of having "benefitted by selling shares purchased before the class period at allegedly inflated prices during the class period." *Apache*, 566 F. Supp. 3d at 718. As such, Ms. Fisher's status as a net seller and net gainer in the longest alleged period precludes her appointment as lead plaintiff.

Realizing that she cannot be appointed lead plaintiff based on her transactions during the longest class period, Ms. Fisher has resorted to supporting a shorter class period that, if accepted, would have the effect of reducing the class's potential recoverable damages before defendants have even had to respond to the allegations. Consequently, the Court should be skeptical of Ms. Fisher's short-sighted gamesmanship which, if successful, may foreclose the lead plaintiff's ability to attempt to pursue a recovery for a substantial amount of the alleged fraud-based stock inflation in this case. *See Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) ("At this stage of the litigation, a shorter class period would have the effect of reducing the class size and limiting the potential amount of damages. It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [Ms. Fisher] lead plaintiff."); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("[N]o benefits accrue by shortening the class period at this stage in the litigation. Indeed, it is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that

- 9 -

particular plaintiff only."). At this early stage of the litigation, the Court should decline Ms. Fisher's invitation to shrink the class's damages.

### 2. Ms. Fisher Has Failed to Make a *Prima Facie* Showing of Typicality and Adequacy

Even assuming for the sake of argument that Ms. Fisher had the greatest financial interest and the Court decided to disregard Ms. Fisher's net-seller and net-gainer status, she still should not be appointed because the Court knows absolutely nothing about her or her ability to serve as lead plaintiff in this case (other than her out-the-gate desertion of the most-inclusive class period, which coincidentally uniquely benefits her to the detriment of class members). And unlike the Pension Fund, which is a transparent multiemployer employee benefit plan with a readily accessible website and a proven track record of serving as a fiduciary to others (*see* §II.C., *infra*), the record is devoid of any information with which the Court could determine whether Ms. Fisher is able to adequately represent the class.

Indeed, "[s]imply making a motion for lead plaintiff status, taken alone, establishes nothing about the movant's adequacy to take on this burdensome task." *Clair v. DeLuca*, 232 F.R.D. 219, 226-27 (W.D. Pa. 2005). Courts routinely find that movants who only provide their name, and nothing more, have failed to make the preliminary Rule 23 showing. *See Camp*, 2019 WL 277360, at *2-*3 (noting that because the competing movant "failed to include any basic details about himself, including where he lives or who he is specifically in his motion," the court found "it difficult to determine whether Singh would indeed be a

- 10 -

typical plaintiff for the class").[6]  On the present record, it is therefore impossible for the Court to even begin to attempt to make the typicality and adequacy determination required by the PSLRA.

   ***The need for additional information about Ms. Fisher is particularly pronounced here given how common the name Amy Fisher is***.  An adequate lead plaintiff would understand that providing identifying details regarding Ms. Fisher in a timely declaration or affidavit compliant with 28 U.S.C. §1746 would be absolutely essential to verify that Ms. Fisher is not, for example: (1) the Amy Fisher from Oklahoma who is a client relations professional with Paycom and has been a Company insider for 14 years;[7] or (2) the Amy Fisher from Derby, Kansas who is an executive client relations representative with the

---

[6]   *See City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at \*3 (S.D.N.Y. May 22, 2020) (declining to appoint movant whose testimony revealed that he "lacks meaningful litigation experience . . . combined with career experience that appears to have no bearing on the management of securities litigation, undermine his claim that he can 'meaningfully oversee and control the prosecution of this consolidated class action'"); *Perez v. HEXO Corp.*, 2020 WL 905753, at \*2 (S.D.N.Y. Feb. 25, 2020) ("an investor seeking to be appointed lead plaintiff – though he need only make a preliminary showing that he satisfies the requirements of Rule 23, . . . 'nonetheless need[s] to provide enough information to make [that] preliminary showing'"); *In re The Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*5 (N.D. Ill. Nov. 15, 2019) (rejecting lead plaintiff motion where the "complete dearth of information accompanying the Wangs' lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation potentially involving thousands of claims for tens, or perhaps hundreds, of millions of dollars"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019) (Denying lead plaintiff to movant with larger financial interest who "ha[d] provided the Court with little to go on with respect to their alleged capacity to manage this litigation."); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that the "record contains no evidence that [movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them").

[7]   https://www.linkedin.com/in/amy-fisher-67946620/

- 11 -

Company.[8]  While it would of course strain credulity to believe that either Ms. Fisher or her counsel would conceal such relevant information from the Court and competing movants if Ms. Fisher was, in fact, a current or former Company employee, the lack of additional identifying information to enable class members to conduct a background investigation of her  whichever Amy Fisher she actually is – precludes Ms. Fisher from satisfying Rule 23 even at this early stage.[9]

Ms. Fisher should not be permitted to submit evidence of her *prima facie* adequacy for the first time in a reply brief.  *See Boeing*, 2019 WL 6052399, at *7 n.10 ("a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process").  This is particularly true given that counsel for Ms. Fisher – who are no doubt aware that courts need more than a movant's name to properly evaluate their qualifications to serve as lead plaintiff – have filed six other lead plaintiff applications on behalf of individual investors in 2024 and all six applications included sworn declarations from the movants with basic biographical

---

[8]     https://www.linkedin.com/in/amy-fisher-a69231119/

[9]     If Ms. Fisher was affiliated with or employed by the Company in any capacity, the most concerning thing would be that neither Ms. Fisher nor her counsel "advise[d] the Court that she was a [defendant] employee . . . until counsel for [an opposing movant] raised it." *In re Michaels Stores, Inc. Sec. Litig.*, 2003 WL 27391238, at *2 (N.D. Tex. Oct. 24, 2003). Indeed, such a relationship between the prospective lead plaintiff and the corporate defendant would obviously create "the appearance of a conflict of interest" rendering her unable to lead the case. *Lifschitz v. Hexion Specialty Chems., Inc.*, 2009 WL 734040, at *2 (S.D.N.Y. Mar. 18, 2009).  In addition, in connection with either the commencement and/or termination of her employment/affiliate relationship with Paycom, there could be an "'agree[ment] to release each other from all claims and actions they have or may have against each other.'" *Id*.

- 12 -

information.  *See* Declaration of Michael Burrage in Support of the Michigan Laborers' Pension Fund's Opposition to Competing Lead Plaintiff Motions, Exs. A-F, attached hereto as Exhibit 1.  Ms. Fisher's (or her counsel's) inability or unwillingness to do so here precludes even a *prima facie* finding of adequacy.  Consequently, Ms. Fisher cannot trigger the PSLRA's presumption.[10]

## C.      The Pension Fund Should Be Appointed Lead Plaintiff

With Dr. Mein, Mr. Minarik, and Ms. Fisher removed from contention, the Pension Fund has the largest financial interest and is otherwise typical and adequate, entitling the Pension Fund to the most adequate plaintiff presumption.   *See* 15 U.S.C. §78u-

---

[10] Yet another deficiency with Ms. Fisher's application is the fact that she has not sufficiently complied with the PSLRA's certification requirement.   The PSLRA's certification provision requires a movant seeking to serve as a representative party to set forth all of their transactions in the securities that are the subject of the complaint during the class period specified in the complaint. *See* 15 U.S.C. §78u-4(a)(2)(A)(iv).  While each of the lead plaintiff movants executed the requisite certifications, only Ms. Fisher's sworn Certification fails to certify that she disclosed all of her transactions in the non-debt and non-equity securities that are the subject of this action (*e.g.,* options). *Compare* ECF No. 29-1 at ¶4 (Ms. Fisher's sworn Certification stating that she "made no transaction(s) during the alleged Class Periods **in the debt or equity** securities that are the subject of this litigation except those set forth in the Chart attached.) *with* No. 30 -1 at ¶4 (The Pension Fund stating that it "has made the following transaction(s) during the Class Period in **the securities** that are the subject of this action."). *See also* ECF 18-1 at ¶4; ECF 21-2 at ¶4; ECF 24-2 at ¶4 (Dr. Mein, Mr. Minarik, and Ms. Herbert all certifying they did not trade in the securities that are the subject of this action.). In other words, Ms. Fisher's Certification is "inadequate" because she has "not certified that the list of transactions [she] provided is complete." *Boeing*, 2019 WL 6052399, at *5 n.6; *see also Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *4 (S.D. Cal. Feb. 12, 2021) (disqualifying lead plaintiff movant who, in her opening papers, was unable to "to affirm [her] transactions without any equivocation").  At bottom, while "[t]his may just be a semantic issue that could be easily cured, rather than a cagey attempt to omit other transactions in [Paycom] securities, . . . it is one more question mark in considering [Ms. Fisher's] adequacy to serve as lead plaintiff." *Boeing*, 2019 WL 6052399, at *5 n.6.

- 13 -

4(a)(3)(B)(iii). None of the issues clouding the candidacy of the competing movants hangs over the Pension Fund.

The Pension Fund is a multi-employer union pension plan managing more than $1 billion in assets for the benefit of more than 24,000 plan participants. Information about the Pension Fund is readily accessible to the public via its website. *See* https://www.michiganlaborers.org/. The Pension Fund has familiarity in serving as a fiduciary on behalf of thousands of people – a role it seeks to take on in this case by serving as lead plaintiff on behalf of harmed Paycom securities investors. Thus, by satisfying each of the PSLRA requirements, the Pension Fund is entitled to the presumption that it is the most adequate plaintiff.

To rebut the presumption in favor of the Pension Fund's appointment as lead plaintiff, the PSLRA requires the other movants to submit "proof" that the Pension Fund "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). None exists. Because none of the competing movants can rebut the presumption that the Pension Fund is the most adequate plaintiff, the other motions should be denied.

- 14 -

## III.    CONCLUSION

Only the Pension Fund satisfies all of the PSLRA's requirements for appointment as lead plaintiff.  As such, its motion should be granted and the competing motions should be denied.

DATED:  January 30, 2024                    Respectfully submitted,

WHITTEN BURRAGE
MICHAEL BURRAGE (OBA No. 1350)
REGGIE WHITTEN (OBA No. 9576)


                                    s/ Michael Burrage
                                    MICHAEL BURRAGE

512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone: 405/516-7800
mburrage@whittenburragelaw.com
rwhitten@whittenburragelaw.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

- 15 -

4875-2114-1153.v1

ROBBINS GELLER RUDMAN
 & DOWD LLP
DANIELLE S. MYERS
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

WATKINS, PAWLICK, CALATI
 & PRIFTI, PC
LAUREN CRUMMEL
1423 East Twelve Mile Rd.
Madison Heights, Michigan 48071
Telephone:  248/ 658-0800
248/658-0801 (fax)
lcrummel@wpcplaw.com

Additional Counsel

- 16 -