**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| ANGELO VENTRILLO JR., Individually and on behalf of all others similarly situated, | Case No.: 5:23-cv-01019-F |
| Plaintiff, | [Captions continued on following page] |
| v. | |
| PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, | |
| Defendants. | |

**DR. CALVIN E. MEIN'S MEMORANDUM OF LAW IN REPLY**
**AND FURTHER SUPPORT OF MOTION FOR LEAD PLAINTIFF**

| | |
|---|---|
| CHRIS H. CALOTO, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>      Defendants. | Case No.: 5:24-cv-00019-R |
| COREY SCHOENROCK, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>      Defendants. | Case No.: 5:24-cv-00012-F |
| JOSEPH MINARIK, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>      Defendants. | Case No.: 5:24-cv-00014-J |

ii

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................................. 1

II.    ARGUMENT ...................................................................................................... 2

    A.    Dr. Mein Is the Presumptive Lead Plaintiff Because He Possesses the Largest Financial Interest in the Litigation and Satisfies Rule 23's Typicality and Adequacy Requirements. ........................................................ 2

        1.  Dr. Mein Lost $1.6 Million Because of Defendants' Fraud. ...................... 2

        2.  Dr. Mein Meets the Typicality Requirement for Rule 23. ........................ 4

        3.  Dr. Mein Satisfies Rule 23's Adequacy Requirement. ............................. 8

III.    CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Andrada v. Atherogenics, Inc.*,
   2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005)................................................6

*Applestein v. Medivation, Inc.*,
   2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sep. 17, 2010) ............................................6

*In re Bridgestone Inv. Corp.*,
   789 F. App'x 13 (9th Cir. 2019).....................................................................................8

*Cook v. Allergan PLC*,
   2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ............................................6

*Deutschman v. Beneficial Corp.*,
   132 F.R.D. 359 (D. Del. 1990) ......................................................................................8

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
   2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) ..........................................6

*Ellis v. Spectranetics Corp.*,
   2015 U.S. Dist. LEXIS 169498 (D. Colo. Dec. 18, 2015).............................................2

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ...................................................................................4

*Fialkov v. Celladon Corp.*,
   2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015)..............................................3

*Flora v. Hain Celestial Grp., Inc.*,
   2017 U.S. Dist. LEXIS 85517 (E.D.N.Y. June 5, 2017) ...............................................8

*Gelt Trading v. Co-Diagnostics, Inc.*,
   2021 U.S. Dist. LEXIS 45963 (D. Utah Mar. 10, 2021) ...............................................5

*Goldstein v. Puda Coal, Inc.*,
   827 F. Supp. 2d 348 (S.D.N.Y. 2011).............................................................................8

*Hall v. Medicis Pharm. Corp.*,
   2009 U.S. Dist. LEXIS 24093 (D. Ariz. Mar. 10, 2009) ..........................................4, 8

*In re HealthSouth Corp. Sec. Litig.*,
   257 F.R.D. 260 (N.D. Ala. 2009).....................................................................................5

*Hessefort v. Super Micro Computer, Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................ 4

*Isaacs v. Musk*,
   2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018) ..................................... 8, 9

*Jaramillo v. Dish Network Corporation*,
   2023 U.S. Dist. LEXIS 145954 (D. Colo. Aug. 16, 2023) ....................................... 5

*In re Lyft Sec. Litig.*,
   2020 U.S. Dist. LEXIS 37606 (N.D. Cal. Mar. 4, 2020)........................................... 3

*Medina v. Clovis Oncology, Inc.*,
   2016 U.S. Dist. LEXIS 19784 (D. Colo. Feb. 18, 2016) .......................................... 7

*Micholle v. Ophthotech Corp.*,
   2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ........................................ 6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   199 F.R.D. 119 (S.D.N.Y. 2001) ........................................................................... 5

*Patel v. Reata Pharms., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021)..................................................................... 5

*In re Priceline.com Inc. Sec. Litig.*,
   236 F.R.D. 89 (D. Conn. 2006)................................................................................ 8

*In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*,
   192 F.R.D. 656 (D. Colo. 2000) ............................................................................. 7

*Scuderi v. Mammoth Energy Servs.*,
   2019 U.S. Dist. LEXIS 156725 (W.D. Okla. Sep. 13, 2019) .......................... 2, 4, 9, 10

*In re SLM Corp. Sec. Litig.*,
   2012 U.S. Dist. LEXIS 8158 (S.D.N.Y. Jan. 24, 2012) ......................................... 11

*In re Stitch Fix, Inc. Sec. Litig.*,
   393 F. Supp. 3d 833 (N.D. Cal. 2019) ..................................................................... 6

*Teroganesian v. Sw. Airlines Co.*,
   2023 U.S. Dist. LEXIS 122196 (S.D. Tex. July 15, 2023)........................................ 5

*In re Tesla, Inc. Sec. Litig.*,
   2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018)..................................... 5, 8

v

*In re Williams Sec. Litig.*,
    2002 U.S. Dist. LEXIS 29738 (N.D. Okla. July 8, 2002) ...........................................11

*In re Williams Sec. Litig.*,
    2006 U.S. Dist. LEXIS 116386 (N.D. Okla. June 12, 2006) (Friot, J.).....................4, 9

*Wolfe v. AspenBio Pharma, Inc.*,
    275 F.R.D. 625 (D. Colo. 2011) ................................................................................7

**Statutes**

15 U.S.C. §78u-4 ...............................................................................................1, 2, 11

## I.    PRELIMINARY STATEMENT

Movant Dr. Calvin E. Mein is the statutory presumptive lead plaintiff because he possesses the "largest financial interest in the relief sought by the class" and "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii). With over $1.6 million in losses, none of the other movants can claim they lost more than Dr. Mein. Further, given his twenty-year career in the United States Army and professional background as a successful ophthalmologist, Dr. Mein makes for an exceedingly credible and upstanding class representative. He will provide excellent representation for his fellow unnamed class members while overseeing the litigation and testifying before a jury, if and when necessary.

The competing movants do not challenge Dr. Mein's losses or his ability to oversee the litigation. Instead, they seek to disqualify him solely because the majority of his losses originate from option transactions. Neither the law nor the facts support this argument. The class definition in this case explicitly includes "sellers of puts." This fact alone distinguishes the matter at bar from the handful of outlier cases cited by the competing movants. Moreover, unlike the cases they cite, Dr. Mein has confirmed that he relied on the integrity of the market for Paycom's stock price when investing and, therefore, cannot be accused of being an "atypical" class member. *See* Supplemental Declaration of Dr. Calvin E. Mein filed herewith (the "Supp. Mein Decl."). In fact, far from being "atypical" of the class, Dr. Mein is the ***only*** movant who invested in Paycom through options ***and*** common stock, meaning that he is the only movant that truly qualifies as being typical of the entire class.

The majority of cases on this issue hold that option traders like Dr. Mein can, and routinely do, serve as lead plaintiffs. No reason exists to deviate from these cases, especially in light of Dr. Mein's sterling educational and professional background and his demonstrated commitment to overseeing this case to a successful resolution.

## II.    ARGUMENT

### A.    Dr. Mein Is the Presumptive Lead Plaintiff Because He Possesses the Largest Financial Interest in the Litigation and Satisfies Rule 23's Typicality and Adequacy Requirements.

"The PSLRA mandates the Court to 'adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that' . . . 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Scuderi v. Mammoth Energy Servs.*, 2019 U.S. Dist. LEXIS 156725, at *5-6 (W.D. Okla. Sep. 13, 2019) (quoting 15 U.S.C. §78u-4(a)(3)). Applying the statutory presumption, Dr. Mein is the most adequate plaintiff.

### 1.    Dr. Mein Lost $1.6 Million Because of Defendants' Fraud.

"'Courts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action.'" *Scuderi*, 2019 U.S. Dist. LEXIS 156725, at *6 (quoting *Ellis v. Spectranetics Corp.*, 2015 U.S. Dist. LEXIS 169498, at *4 (D. Colo. Dec. 18, 2015)). Dr. Mein lost over $1.6 million due to Defendants' alleged wrongful conduct. *See* Dkt. No. 18-2 (Dr. Mein's loss analysis). In comparison, Mr. Minarik lost $1.2 million while the Michigan Laborers' Pension Fund, Ms. Fisher, and Ms. Herbert lost $320,000, $287,000, and $40,000, respectively. *See* Dkt. Nos. 30-1 (Michigan Fund loss

2

analysis), 29-2 (Ms. Fisher loss analysis), 24-3 (Ms. Herbert loss analysis).

None of the other movants challenges Dr. Mein's loss of $1.6 million. Instead, only Mr. Minarik argues that i) Dr. Mein should not have included losses from transactions that occurred before the end of the Class Period and ii) after removing those losses, Dr. Mein lost only $70,000 more than Mr. Minarik, which is "marginal" and should be overlooked. *See* Dkt. No. 38, p. 3. Mr. Minarik's argument is misguided for the following two reasons.

*First*, the complaints on file allege that plaintiffs sustained damages when corrective information was released to the market on both August 1, 2023 and October 31, 2023. *See*, *e.g.*, *Caloto* Complaint, No. 1:23-cv-11086, Dkt. No. 1, ¶¶36, 40; *Schoenrock* Complaint, No. 5:24-cv-00012, Dkt. No. 1, ¶¶41, 45. The existence of multiple corrective disclosures means that the "fraud premium" varied during particular points in the alleged class period, thereby supporting the "economic loss" methodology for evaluating the movants' competing "financial interests." *See In re Lyft Sec. Litig.*, 2020 U.S. Dist. LEXIS 37606, at *13 (N.D. Cal. Mar. 4, 2020); *Fialkov v. Celladon Corp.*, 2015 U.S. Dist. LEXIS 192311, at *16 (S.D. Cal. Dec. 9, 2015) (rejecting *Dura* analysis and adopting "most expansive view of potential recovery in determining which party has the greatest financial interest"). Thus, Dr. Mein lost $1.6 million and Mr. Minarik is wrong to suggest that his intra-Class Period losses should be disregarded.

*Second*, even assuming that Dr. Mein lost only $70,000 more than Mr. Minarik (instead of $400,000), "any financial difference is meaningful in determining a lead plaintiff." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (rejecting argument "that the difference in losses is *de minimis* and therefore should

3

not control the selection of lead plaintiff"); *accord Hall v. Medicis Pharm. Corp.,* 2009 U.S. Dist. LEXIS 24093, at \*19 (D. Ariz. Mar. 10, 2009); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004). Accordingly, Dr. Mein possesses the larger financial interest.

**2.    Dr. Mein Meets the Typicality Requirement for Rule 23.**

"Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought. Factual differences will not render a claim atypical if the claim is based upon the same legal or remedial theory and arises from the same events or course of conduct." *In re Williams Sec. Litig.*, 2006 U.S. Dist. LEXIS 116386, at \*38-39 (N.D. Okla. June 12, 2006) (Friot, J.); *see also Scuderi*, 2019 U.S. Dist. LEXIS 156725, at \*7 ("The typicality requirement is satisfied 'so long as the claims of the class representative and class members are based upon the same legal theory or remedial theory.'"). Like all purported class members in this case, Dr. Mein invested in Paycom during the Class Period while the Company's stock price was artificially inflated and suffered injuries based on the same alleged fraudulent conduct.

The sole fact that Dr. Mein used options to invest in Paycom does ***not*** interfere with typicality. This is because the class definition in this case explicitly includes investors who "sold publicly traded put options of Paycom . . . ." *See*, *e.g.*, *Schoenrock* Complaint, No. 5:24-cv-00012-F, Dkt. No. 1, ¶1. Thus, Dr. Mein is typical of his other class members, by definition, and can serve as the lead plaintiff. *See In re Tesla, Inc. Sec. Litig.*, 2018 U.S. Dist. LEXIS 212238, at \*9 (N.D. Cal. Dec. 17, 2018) (lead plaintiff was option trader); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415 (S.D.N.Y. 2014) (class definition included put options sellers); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D.

4

260 (N.D. Ala. 2009) (class definition included persons who purchased or acquired options); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001) (class included put options sellers).

The Michigan Laborers' Pension Fund and Ms. Fisher rely heavily on *Jaramillo v. Dish Network Corporation*, 2023 U.S. Dist. LEXIS 145954 (D. Colo. Aug. 16, 2023). *See* Dkt. No. 41, p. 3; Dkt. No. 40, pp. 6-7. The class in that case was defined as: "all persons and entities other than Defendants that purchased or otherwise acquired Dish securities between February 22, 2021 and February 2023, both dates inclusive." *Jaramillo*, 2023 U.S. Dist. LEXIS 145954, at *7. That lies in stark contrast to the class definition here. In fact, *none* of the cases cited by the Michigan Laborers' Pension Fund or Ms. Fisher involved a class definition that, like the class definition here, explicitly included sellers of put options.[1]

The Michigan Laborers' Pension Fund also incorrectly states in conclusory fashion that Dr. Mein did not rely on the "integrity of the market" when investing in Paycom. Dkt.

---

[1] *See Teroganesian v. Sw. Airlines Co.*, 2023 U.S. Dist. LEXIS 122196 (S.D. Tex. July 15, 2023) ("purchased or otherwise acquired publicly traded Southwest Airlines securities"); *Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 563 (E.D. Tex. 2021) ("purchased or otherwise acquired Reata securities"); *Gelt Trading v. Co-Diagnostics, Inc.*, 2021 U.S. Dist. LEXIS 45963, at *5 (D. Utah Mar. 10, 2021) ("purchased Co-Diagnostics stock"); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 U.S. Dist. LEXIS 242969, at *2 (S.D.N.Y. Dec. 28, 2020) ("purchased or otherwise acquired UCO securities"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833 (N.D. Cal. 2019) ("purchasers of Stitch Fix common stock"); *Cook v. Allergan PLC*, 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ("purchased or otherwise acquired Defendant Allergan plc . . . common stock"); *Micholle v. Ophthotech Corp.*, 2018 U.S. Dist. LEXIS 41120, at *4 (S.D.N.Y. Mar. 13, 2018) ("purchased or otherwise acquired shares of Ophthotech"); *Applestein v. Medivation, Inc.*, 2010 U.S. Dist. LEXIS 98255, at *2-3 (N.D. Cal. Sep. 17, 2010) ("purchased Medivation securities"); *Andrada v. Atherogenics, Inc.*, 2005 U.S. Dist. LEXIS 6777, at *3 (S.D.N.Y. Apr. 18, 2005) ("purchased Atherogenics stock").

No. 41 at 5. However, Dr. Mein most certainly did and, therefore, there is no reason to exclude Dr. Mein from serving as the lead plaintiff. As confirmed in his accompanying supplemental declaration, Dr. Mein sold put options on the premise that Paycom's stock price would increase or, at minimum, remain at its current level. Supp. Mein Decl. at ¶4. He relied on the market prices of Paycom's stock price just like every other member of the class. *Id.* at ¶9. Paycom's stock price then plummeted in connection with the first alleged corrective disclosure in the case on August 1, 2023. *Id.* at ¶7. Dr. Mein proceeded to hold the majority of his shares to his detriment when Paycom's stock price plummeted a second time at the end of the Class Period on November 1, 2023. *Id.* at ¶8. The following chart illustrates the timing of Dr. Mein's investments in relation to Paycom's stock price declines and his corresponding losses:



Just like every other class member who purchased shares on the open market, Dr. Mein incurred substantial losses when Paycom's stock price declined on August 1 and then again on November 1. "Although different plaintiffs may invoke different factual circumstances, typicality is present 'so long as the claims of the class representative and class members are based upon the same legal or remedial theory.'" *See Wolfe v. AspenBio Pharma, Inc.*, 275 F.R.D. 625, 628 (D. Colo. 2011) (quoting *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 192 F.R.D. 656, 658 (D. Colo. 2000)). Indeed, the notion that Dr. Mein cannot serve as the lead plaintiff solely because he traded options runs contrary to the majority of the case law on this issue. *See*, *e.g.*, *Medina v. Clovis Oncology, Inc.*, 2016 U.S. Dist. LEXIS 19784 (D. Colo. Feb. 18, 2016) (appointing lead plaintiff movant group that held options); *Flora v. Hain Celestial Grp., Inc.*, 2017 U.S. Dist. LEXIS 85517, at *6-7 (E.D.N.Y. June 5, 2017) ("the fact that [co-lead plaintiff movant] only purchased options during the class period does not rebut the presumption in its favor."); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 357 (S.D.N.Y. 2011) (appointing lead plaintiff movant group that included a member which traded in options); *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 100 (D. Conn. 2006) (certifying class representative who "testified that his practice of writing put options was founded upon the integrity of the price of the underlying shares"); *Hall*, 2009 U.S. Dist. LEXIS 24093 (appointing option holder as Lead Plaintiff instead of common stock purchaser); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (appointing lead plaintiff who purchased only call options to represent class of purchasers of call options and common stock).

*Isaacs v. Musk*, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018), confirms Dr. Mein's point on this issue.[2] In that case, the court appointed an individual investor as the lead plaintiff who sustained the majority of his losses from trading options. The court held: "Some moving parties have criticized Mr. Littleton because his long position in common stock (as opposed to options) resulted in a relatively small loss compared to others. While this is true, Mr. Littleton sustained a significant loss from his long position in options; the interests of those who held long positions in options and those who held long positions in common stock are ***sufficiently similar*** to render his representation adequate as to both." *Id*. at \*19 (emphasis added). Similarly, Dr. Mein's losses stem primarily from options; however, like Mr. Littleton in *Isaacs v. Musk*, Dr. Mein also sustained losses from purchasing common stock. Therefore, "[Dr. Mein] held interests that cover most of the persons/entities likely to be in the class — *i.e.*, long positions in common stock, long positions in options, and short positions in options — and thus can most adequately represent the class." *Id*. at \*18-19.

### 3.      Dr. Mein Satisfies Rule 23's Adequacy Requirement.

Dr. Mein also meets the adequacy prong of the Rule 23 analysis. There is "nothing in the record suggest[ing] any potential conflicts between [Dr. Mein] and other class members." *Scuderi*, 2019 U.S. Dist. LEXIS 156725, at \*8-9. As discussed above, his trades do not subject him to any unique defenses. *See In re Williams Sec. Litig.*, 2006 U.S. Dist.

---

[2] The decision in *Isaacs v. Musk* was affirmed twice, first by the district court in response to a motion for reconsideration, *In re Tesla, Inc. Sec. Litig.*, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018), and then again by the Ninth Circuit when denying a petition for a writ of mandamus, *In re Bridgestone Inv. Corp.*, 789 F. App'x 13 (9th Cir. 2019).

LEXIS 116386, at *39 (rejecting arguments based on alleged unique trading patterns). Dr. Mein's educational and professional background also demonstrate his extraordinary qualifications for the role of lead plaintiff. Indeed, he grew up in Kansas, went to medical school, joined the U.S. Army, and now lives in Texas. *See* Supp. Mein Decl. at ¶¶2-3. As a successful doctor with a twenty-year career of service in the U.S. Army, he will make for an extremely credible witness and excellent representative of the class.

Dr. Mein's selection of Levi & Korsinsky, LLP, as class counsel further demonstrates his adequacy under Rule 23. *See Scuderi*, 2019 U.S. Dist. LEXIS 156725, at *9. The firm has served as lead counsel in dozens of complex securities fraud class actions over the past decade and has secured numerous multi-million dollar recoveries for investors. *See* Dkt. No. 18-5 (Levi & Korsinsky Firm Resume). Against this backdrop, Mr. Minarik suggests that four lone cases warrant scrutiny over Dr. Mein's selection. Dkt. No. 38 at 6-7. Nothing about these four cases though suggests the firm did anything wrong. In *Pierrelouis v. Gogo Inc.*, Levi & Korsinsky did not withdraw, as Mr. Minarik claims, but instead continued in its role as co-lead counsel to achieve a successful recovery of $17.3 million. No. 1:18-cv-04473 (N.D. Ill.), Dkt. No. 150-1 (Ex. A). Likewise, in *In re Nutanix, Inc. Securities Litigation*, the firm did not withdraw but continued on as class counsel for an options subclass that yielded a total recovery of $71 million. No. 3:19-cv-01651 (N.D. Cal.), Dkt. No. 307-2 (Ex. B). In *Carpenter v. Oscar Health*, the firm withdrew from its co-lead counsel role because the client was unable to continue on as a lead plaintiff due to personal reasons. No. 1:22-cv-03885-VSB-VF (S.D.N.Y.), Dkt. No. 70 (Ex. C). And in *Winter v. Stronghold Digital Mining, Inc.*, the firm similarly withdrew from its co-lead

counsel role due to a personal health issue that prevented the client from participating in the litigation. No. 1:22-cv-03088-RA (S.D.N.Y.), Dkt. No. 98 (Ex. D).[3]

## III.   CONCLUSION

None of the arguments raised by the competing movants is sufficient to disqualify Dr. Mein from serving as the lead plaintiff in this action. They do not rise to the level of "proof" necessary to rebut the statutory presumption in his favor. *Scuderi*, 2019 U.S. Dist. LEXIS 156725, at *6 (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).[4] Consequently, Dr. Mein respectfully requests that the Court grant his motion in its entirety.

[*Signature blocks on following page*]

---

[3] In *Stronghold*, Mr. Minarik's counsel, The Rosen Law Firm, supported the appointment of Dr. Mein's counsel, Levi & Korsinsky, co-lead counsel, stating in open court that "I've had other cases where I've been co-lead counsel with Mr. Apton's firm, and we have worked cooperatively and done so in this manner." *Id.*, Dkt. No. 44, p. 5:23-5:25 (Ex. E). Copies of the settlement stipulations and other materials cited above, including the transcript referenced in this footnote, are attached hereto as Exhibits A through E, respectively.

[4] Nor does Dr. Mein's submission of an amended certification constitute "proof" of inadequacy. *See In re Williams Sec. Litig.*, Case No. 02-CV-72-H(M), 2002 U.S. Dist. LEXIS 29738, at *33 n.8 (N.D. Okla. July 8, 2002); *see also In re SLM Corp. Sec. Litig.*, 08 Civ. 1029 (WHP), 2012 U.S. Dist. LEXIS 8158, at *24 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.").

10

Dated: February 6, 2024

Respectfully Submitted,

**CARUSO & SMITH, PLLC**

By: /s/ *Mark A. Smith*
Mark A. Smith, OBA #31231
Dennis A. Caruso, OBA #11786
2021 South Lewis Avenue Suite 720
Tulsa, OK 74104
Tel: 918-583-5900
Fax: 918-583-5902
msmith@carusosmithok.com
dcaruso@carusosmithok.com

*Liaison Counsel for Movant and*
*[Proposed] Liaison Counsel for the*
*Class*

Adam M. Apton (admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Movant and*
*[Proposed] Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I, Mark A. Smith, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 6th day of February, 2024.

/s/ *Mark A. Smith*
Mark A. Smith

12