**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| |
|---|
| ANGELO VENTRILLO JR., Individually and on behalf of all others similarly situated, |
| |
| Plaintiff, |
| |
| v. |
| |
| PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, |
| |
| Defendants. |

Case No.: 5:23-cv-01019-F

[Captions continued on following page]

**DR. CALVIN E. MEIN'S MEMORANDUM OF LAW IN REPLY**
**AND FURTHER SUPPORT OF MOTION FOR LEAD PLAINTIFF**

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK WINTER, *et al.*,

                Plaintiffs,

          v.                            22 CV 3088 (RA)

STRONGHOLD DIGITAL MINING,
INC., *et al.*,

                Defendants.            Conference
                                       (via Telephone)
------------------------------x
                                       New York, N.Y.
                                       August 4, 2022
                                       4:15 p.m.

Before:

                    HON. RONNIE ABRAMS,

                                       District Judge

APPEARANCES

LEVI & KORSINSKY, LLP
        Attorneys for Lead Plaintiff Gulzar Ahmed
BY:  ADAM M. APTON

GLANCY PRONGAY & MURRAY LLP
        Attorneys for Plaintiff Edward J. Young
BY:  CHARLES H. LINEHAN
        GREGORY B. LINKH

POMERANTZ LLP
        Attorneys for Plaintiff Greg Stuart
BY:  ALEXANDER HOOD

VINSON & ELKINS LLP
        Attorneys for Defendants Stronghold Digital Mining, Inc.,
        Gregory A. Beard, and William B. Spence
BY:  CLIFFORD L. THAU

FAEGRE DRINKER BIDDLE & REATH LLP
        Attorneys for Defendant Ricardo R. A Larroude
BY:  SANDRA D. GRANNUM

WILLKIE FARR & GALLAGHER LLP
        Attorneys for Underwriter Defendants
BY:  JEFFREY B. KORN

THE ROSEN LAW FIRM
        Attorneys for Intervenor Plaintiff Allegheny County
        Employees Retirement System
BY:  PHILLIP C. KIM

THE COURT: Good afternoon, everyone. I don't think I heard defendant state their appearances, but counsel for each of the plaintiffs did. Why don't we just do it again quickly, just to make sure the record is clear.

Starting with plaintiff's counsel, please.

MR. APTON: Good afternoon, Judge Abrams, Adam Apton from Levi & Korsinsky for movant, Mr. Ahmed.

THE COURT: Good afternoon.

MR. KIM: Good afternoon, Phillip Kim, Rosen Law Firm, for lead plaintiff/movant, Allegheny County Employees Retirement System, also known as ACERS.

THE COURT: Good afternoon.

MR. LINEHAN: Good afternoon. Charles Linehan from Glancy Prongay & Murray on behalf of Edward J. Young. With me is Greg Linkh, also from Glancy Prongay & Murray, on behalf of Edward Young.

THE COURT: Good afternoon.

MR. HOOD: Good afternoon. Alexander Hood of Pomerantz on behalf of movant Greg Stuart.

THE COURT: Good afternoon.

On behalf of defendants.

MR. THAU: Yes, your Honor. Good afternoon. This is Cliff Thau from Vinson & Elkins for Stronghold Digital Mining, Inc., William Spence, and Greg Beard.

MS. GRANNUM: This is Sandra Grannum from Faegre

Drinker Biddle & Reath on behalf of Mr. Ricardo Larroude.

THE COURT:  Good afternoon.

MR. KORN:  Good afternoon, your Honor.  This is Jeff Korn of Willkie Farr & Gallagher for the underwriter defendants.

THE COURT:  Good afternoon.

We are here to discuss the motions to appoint lead plaintiff and lead counsel.

Before me are four motions.  One brought by Gulzar Ahmed, one by Edward Young, one by Greg Stuart, and one brought by the Allegheny County Employees Retirement System, which I'll refer to as ACERS.

After ACERS filed its initial motion, Mr. Ahmed, Mr. Young, and Mr. Stuart filed notices of nonopposition, which they asserted that they did not possess the largest financial interest in this litigation within the meaning of the PSLRA.

However, ACERS filed a notice of errata on July 21 in which it significantly reduced its loss amount.

Following that filing, Mr. Ahmed withdrew his notice of nonopposition and filed a supplemental brief.  Mr. Stuart and Mr. Young then filed supplemental notices in which Mr. Stuart maintained his nonopposition to all three competing motions and in which Mr. Young maintained his nonopposition to Mr. Ahmed's motion, but opposed ACERS' motion.

Just about an hour ago, ACERS filed a supplemental

letter in which it continued to oppose Mr. Ahmed's motion, notwithstanding his greater financial loss.

I have read all of the submissions. If anyone wants to be heard further, I'll hear them out.

But just to cut to the chase, I'll tell you that what I am inclined to do is to appoint colead plaintiffs and colead counsel in this case, in light of the somewhat unusual circumstances. I want to know if anyone has an objection to that

MR. APTON: I would respectfully object to that. The grounds for appointing colead counsel in this particular instance are not necessary. Whatever happened over at ACERS or Allegheny, there is an inattention to detail.

My client, I don't know, I don't think he would be open to having counsel other than the counsel he selected, my firm, Levy & Korsinsky, to serve as lead counsel.

I can stop there, your Honor.

THE COURT: If it helps you change your position, I'll tell you that, otherwise, I was really inclined to appoint ACERS as lead plaintiff. But I'm happy to hear ACERS out.

MR. KIM: If the Court were to order the appointment of colead plaintiff lead counsel, ACERS would be fine with that. I've had other cases where I've been colead counsel with Mr. Apton's firm, and we have worked cooperatively and done so in this manner.

If for whatever reason Mr. Ahmed feels that being a colead plaintiff with ACERS, who has a local interest in this case, because the factory at issue is actually in a neighboring county. That is why Allegheny got involved in this case and certainly will aggressively pursue this matter.

If for whatever reason, Mr. Ahmed would not agree to work with ACERS, then we think it's correct that the Court should appoint ACERS, given its sophistication and the preference of other judges in the Southern District have found in the PSLRA that's provided to institutions.

THE COURT: I can recite my reasoning, but, Mr. Apton, let me ask you this. Would you rather my appoint ACERS or appoint you cocounsel to ACERS, or your client as colead plaintiff.

MR. APTON: Judge Abrams, that's a well-put question. I have worked with particularly Mr. Kim and his firm on numerous occasions. I do have a great deal of respect for them.

Given Mr. Kim's background and his firm's background, I'm confident that we could probably work out a situation where we do collectively together jointly manage the case in an efficient way that does serve the best interests of the class. In short, colead is fine by us.

THE COURT: Thank you. That's what I am going to do. I should say that I rarely appoint colead plaintiffs or colead

counsel, even when it's requested, but I do think it's appropriate here, and I'll state my reasoning briefly.

The PSLRA requires the Court to appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be the most capable of adequately representing the interests of class members. The PSLRA creates a rebuttable presumption. The most adequate plaintiff is the one who (1) has either filed a complaint or made a motion in response to a notice; (2) in the determination of the Court has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

This presumption may be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render him incapable of adequately representing the class.

The PSLRA does not specify a method for calculating who has the largest financial interest, but courts in this district typically look to four factors in making this determination: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended during the class period; and (4) the approximate losses. The fourth factor, the largest loss, is considered by

many courts to be the most important factor.

According to their motion papers, Mr. Ahmed lost approximately $105,624.97, Mr. Young lost approximately $25,909.50, Mr. Stuart lost approximately $21,216, and ACERS last approximately $59,625.84.

Accordingly, Mr. Ahmed has the largest financial interest in the litigation, with an alleged loss of over $105,000, 22,739 shares purchased, and 20,867 net shares retained.

Mr. Ahmed has also made a preliminary showing of satisfying the typicality and adequacy requirements of Rule 23 because his claims arise from the same course of conduct affecting each member of the proposed class, and there is no indication that he has a conflict of interest with any member of the proposed class or has selected counsel that cannot adequately represent the proposed class.

At last week's conference, counsel for ACERS suggested that Mr. Ahmed's failure to appear at that conference indicates that he's not an adequate plaintiff.  I'm inclined to forgive this oversight, particularly given (1) that ACERS' July 21 filing was somewhat obscurely titled notice of errata, and it may not have been clear until the reader read the attached amended loss chart; and (2) it could be argued that the errors in ACERS' initial motion similarly affects its adequacy to serve as lead plaintiff.

I frankly think that it's most appropriate just to disregard both of those oversights.

ACERS argues in its letter, as I noted earlier, that Mr. Ahmed has not demonstrated his adequacy because he has been investing for only one year and works for the MTA.  I don't think these factors are enough to show his inadequacy, but, nonetheless, I share ACERS' concern about Mr. Ahmed's relative lack of business experience and management experience, which are legitimate and important considerations in determining the adequacy of a lead plaintiff.  *See, e.g., Nakamura v. BRF*, 2018 WL 3217412 at *4.  Indeed, ACERS' comparative size, available resources, and experience make it more appropriate to be lead plaintiff than Mr. Ahmed.

Moreover, ACERS rightly notes that appointing an individual plaintiff in lieu of an institutional plaintiff is in tension with the purpose of the PSLRA because it's well accepted that Congress, in enacting the PSLRA, considered that the statute's aims would be best served by having institutional plaintiffs with the expertise in the securities market and real financial interests in the integrity of the market as lead plaintiff.  That's just a quote from the *Rozenboom* case 2004 WL 816440 at *5.

Several courts have appointed individual investors and institutional investors as colead plaintiffs when each plaintiff, standing alone, was not an ideal lead plaintiff.  I

have a number of cites for that, both from the Eastern District of Virginia, the Southern District of New York, and the District of New Jersey, but, for the sake of time, I am not going to read all those citations in the record.

I think that given the unusual facts of this case, where an individual's financial losses are nearly twice as great as that of the institutional investor, I find that a colead plaintiff structure is appropriate, and it's for that reason that I'm appointing ACERS and Mr. Ahmed as colead plaintiff.

Mr. Ahmed seeks the selection of Levi & Korsinsky, LLP as lead counsel for the class. I have reviewed the firm resumé of that firm and conclude that it is qualified. ACERS, for its part, seeks the selection of the Rosen Law Firm as lead counsel, and I also find that this firm is qualified based on its resumé and experience as well. Accordingly, those two firms are appointed as colead counsel.

I do just want to note that I want to make sure that counsel for both firms are careful to avoid any unnecessary duplication of work, and I'll carefully scrutinize counsel's bill records during this case and thus expect you to work together with efficiency, which it sounds like you have done before and can do again.

That's my ruling. What do you propose in terms of next steps? And if because you'll be working together you want

to meet and confer and talk about that and submit a letter to that effect, I don't want to put you on the spot. But it would be helpful if maybe you did that, unless you are ready to speak today, and let me know in a week or so if you expect to file an amended complaint. If so, when, or, again, I think it probably makes the most sense for you to just submit a letter in a week or so.

Does that work for both counsel, Mr. Kim, and Mr. Apton?

MR. KIM: Your Honor, I believe there is a stipulation and order on the docket that requires the lead plaintiffs, now lead plaintiffs plural, and lead counsel to confer with defendants and submit a schedule for the filing of an amended complaint and motions to dismiss. I think the Court required that to happen within 14 days. I think we would just comply with that and submit a schedule to her Honor.

THE COURT: Thank you. You're absolutely right. Thank you for reminding me about that. I think that makes sense. So there is no need to submit an additional submission.

I will just sign an order appointing Mr. Ahmed and ACERS as colead plaintiffs, approving their counsel. That will be on the docket later today.

If there are any other issues you want to raise, feel free to submit a letter once you all have had the opportunity to coordinate with one another.

Thank you all so much. I would encourage you to reach out to the court reporter to get a copy of the transcript of today. I am going to hand over some materials to the court reporter so you have all the citations and the like of the cases I relied on, but thank you. Have a good day, all.

(Adjourned)