William B. Federman
Federman & Sherwood
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560

*Proposed Liaison Counsel for the Class*

*[Additional counsel appear on signature page]*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELO VENTRILLO JR., Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, <br><br> Defendants. | Case No.: 5:23-CV-01019-F |
| COREY SCHOENROCK, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, <br><br> Defendants. | Case No.: 5:24-CV-00012-F |

[Caption continues on next page.]

| | |
|---|---|
| JOSEPH MINARIK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>Defendants. | Case No.: 5:24-CV-00014-J |

**MOVANT JOSEPH MINARIK'S REPLY IN FURTHER SUPPORT OF HIS LEAD PLAINTIFF MOTION**

Proposed Lead Plaintiff Joseph Minarik ("Mr. Minarik" or "Movant") respectfully submits this reply in further support of his lead plaintiff motion. Dkt. No. 19.

Mr. Minarik is the presumptive lead plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and his motion should be granted. Mr. Minarik and Dr. Calvin Mein ("Dr. Mein") have essentially the same losses under the claims of this case and it is undisputed that no other movant has larger losses. *See* Dkt. Nos. 21-3, 18-2, 29-2, and 30-1. In his Memorandum of Law in Opposition to Competing Lead Plaintiff Motions, Mr. Minarik demonstrated that, in comparison to Dr. Mein, he better meets Rule 23's adequacy and typicality requirements, and is therefore the presumptive lead plaintiff. *See* Dkt. No. 38. Mr. Minarik is an executive at a datacenter company, holds a bachelor's degree in computer science, and has been investing since the late 1990s. *See* Dkt. No. 20 at 10.

1

In opposition, Dr. Mein argues that he possesses the largest loss and is therefore the presumptive lead plaintiff. *See* Dkt. No. 39. However, in making this assertion, Dr. Mein improperly inflates his losses by accounting for shares sold prior to any corrective disclosure. *Id.* When properly calculated without these in-and-out losses, Dr. Mein's financial interest totals $1,302,000. Dkt. No. 18-2.

Two other movants, Amy Fisher ("Ms. Fisher") and the Michigan Laborers' Pension Fund (the "Fund"), attempt to rebut the presumption in favor of Mr. Minarik by arguing that Mr. Minarik's options transactions somehow render Mr. Minarik inadequate or atypical. *See* Dkt. Nos. 40 and 41. Those speculative arguments are without merit and fall considerably short of the proof required to rebut the presumption in favor of Mr. Minarik. As such, Mr. Minarik's motion should be granted, and the competing motions should be denied.

## I.     DR. MEIN INFLATED HIS LOSSES BY INCLUDING LOSSES ON SHARES SOLD PRIOR TO ANY CORRECTIVE DISCLOSURE

Dr. Mein substantially inflated his financial interest by crediting losses on shares sold prior to any corrective disclosure. Dkt. No. 39 at 2. In his opposition brief, Dr. Mein states that his losses amount to $1,659,500. *Id.* However, as conceded in his initial motion papers, if one is to subtract Dr. Mein's losses sold prior to any corrective disclosure, his loss amounts to $1,302,000. Dkt. No. 18-2. The Supreme Court explained in *Dura*, "If [. . .] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura,* 544 U.S. at 342. "In *Dura*[], the Supreme Court distinguished between economic losses and recoverable damages." *Foster*

*v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) (citing *Dura,* 544 U.S. at 342).

Therefore, Courts do not credit in-and-out losses at the lead plaintiff stage. *See e.g., Marjanian v. Allied Nevada Gold Corp.*, 2014 WL 12769810, at *3 (D. Nev. Nov. 7, 2014) ("[o]nly losses sustained after the misrepresentation 'become generally known' are recoverable. This prevents inflated claims of losses that could have been caused 'not [by] the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.'") (citing *Dura,* 544 U.S. at 346 and 343); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *6 (N.D. Cal. Feb. 15, 2011) ("Because *Dura* and its progeny create a potential distinction between actual losses and recoverable damages and because a plaintiff's financial interest in the case is more strongly tied to the latter, the Court will first compare each movant's potential recovery."); *Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020) ("Considering the guidance of *Dura*, *Metzler*, and *In Re Oracle Securities Litigation* that recoverable losses must be traceable to the alleged fraud instead of ordinary market forces, along with the factual circumstances alleged in this case, the Court is satisfied that the recoverable loss method is the most appropriate method to apply here in appointing lead plaintiff.") (citing *Dura,* 544 U.S. 336; *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008); and *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010)); *In re Comverse Technology, Inc. Securities Litigation*, 2007 WL 680779, at *4 (E.D.N.Y. March 2, 2007) ("[U]nder Dura and its progeny, any

3

losses that [movant] may have incurred before [Defendant's] misconduct was ever disclosed to the public are not recoverable, because ***those losses cannot be proximately linked to the misconduct at issue in this litigation.*** While the Dura Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that ***any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff.***") (emphasis added).

## II.    MS. FISHER AND THE FUND FAIL TO REBUT THE PRESUMPTION IN FAVOR OF MR. MINARIK

Because Mr. Minarik is entitled to the Lead Plaintiff presumption, Ms. Fisher and the Fund must come forward with *proof* that Mr. Minarik is inadequate or atypical under Rule 23. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) ("The presumption … may be rebutted only upon proof …") (emphasis added). "A named plaintiff meets the adequacy requirement if its interests are 'sufficiently aligned with those of the other class members.'" *In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at \*15 (S.D. Tex. May 10, 2002), *amended,* 2003 WL 27380802 (S.D. Tex. July 31, 2003) (quoting *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 273 (E.D. Tex. 1985), *aff'd*, 782 F.2d 468 (5th Cir. 1986)).

Typicality requires "that the claims of the class representative not differ significantly from the claims of the class as a whole." *Waste Mgmt., Inc. Sec.*, 2002 WL 35644013, at \*14 (citing cases); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010) ("To make such a preliminary showing, potential lead plaintiffs need not submit evidentiary proof of typicality or adequacy.") (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)).

4

Mr. Minarik is not subject to any unique defenses. Indeed, there is no real concern that Mr. Minarik's involvement would derail the case. *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) ("[Ms. Fisher and the Fund] ha[ve] explicitly declined to offer any evidence that [Mr. Minarik's] specific options are themselves atypical.").

In an effort to rebut the presumption in favor of Mr. Minarik, Ms. Fisher and the Fund argue that stock options and shares purchased in connection with those stock options somehow render Mr. Minarik inadequate or atypical. These speculations are without merit.

First, Mr. Minarik is not subject to any disabling unique defense. Options are explicitly included in the class.[1] The stock Mr. Minarik purchased via stock options was purchased during the Class Period. There is nothing unique about Mr. Minarik that would not make him similarly situated as to other members of the Class. Indeed, in selling put options, Mr. Minarik, like those who only purchased Paycom stock, was also betting that the price of Paycom stock would rise.[2] Thus, Mr. Minarik has the same incentive to prove

---

[1] The first-filed case defines the class to include securities. Options are securities. Additionally, the following above-captioned complaints explicitly make reference to options trading in defining the class: *Schoenrock v. Paycom Software, Inc. et al*, Case No. 5:24-cv-00012-F (W.D. Okla.) defines the class as "all investors who purchased or otherwise publicly traded Paycom securities and/or sold publicly traded put options of Paycom"; and *Minarik v. Paycom Software, Inc. et al*, Case No. 5:24-cv-00014-J (W.D. Okla.) defines the class as "those who purchased Paycom call options or sold put options during the Class Period, including Paycom common stock purchased or otherwise acquired in connection with the exercise of such options."

[2] "An investor would choose to sell a …. put option if their outlook on the underlying security was that it was going to rise[.]" Put Option vs. Call Option: When to Sell, *Investopedia*,    https://www.investopedia.com/ask/answers/06/sellingoptions.asp,    last visited February 6, 2023.

fraud as those who only purchased Paycom stock. *See Giovagnoli v. Global SCAPE, Inc.*, 2017 WL 11220692, at *3-4 (W.D. Tex. Nov. 6, 2017) ("It is not necessary that a proposed lead plaintiff's claims be identical to the claims of other class members. …Accordingly, the Court finds that [Mr. Minarik's] claims are typical of the class. … [Mr. Minarik] states that there is no antagonism between his interests and those of putative class members, and because of his losses, he has a sufficient interest in the outcome of this action and will fairly and adequately protected the interests of the class. Accordingly, the Court finds that [Mr. Minarik]is an adequate representative of the class.")

Indeed, of the four movants here, two transacted in options and two transacted solely in stock—demonstrating that the class's claims clearly cover *both* options and stock. *See* Dkt. Nos. 18-2, 21-3, 29-2, and 30-1. The argument advanced by both Ms. Fisher and the Fund—that Mr. Minarik and Dr. Mein are atypical—therefore constitutes a double-edged sword. If one does consider Mr. Minarik to be atypical of Ms. Fisher and the Fund, then Ms. Fisher and the Fund must likewise be considered atypical of Mr. Minarik and Dr. Mein, as well as all other class members who transacted in options.

Next, there is nothing unique about Mr. Minarik nor his transactions. For a defense to be a disabling "unique defense," it has to be unique to a lead plaintiff movant and not something other class members are subject to. *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d at 1327 (N.D. Ga. 2007) ("a defense which is unique to the class representative and which has the potential to become 'the focus of the litigation' may suffice to destroy typicality.") (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)). Indeed, Mr. Minarik has the same incentive

6

to prove fraud as those who only purchased Paycom stock. *See Medina v. Clovis Oncology, Inc.*, 2016 WL 660133, at *3 ("With respect to typicality, [Mr. Minarik's] claims, like those of the other Moving Parties, are typical of the wider class: namely, defendant [Paycom] and its officers and directors allegedly issued false or misleading statements that inflated [Paycom's] share price and, when the falsity or misleading nature of these statements was revealed, caused damages. Although [Mr. Minarik] may have held securities that other members of the class did not, such as options [], the losses allegedly incurred on those securities are still premised on the same factual allegations and legal theories. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (dismissing an argument that a party, who sold options in the defendant's stock, could not act as lead plaintiff because the party also traded in common stock and the injuries of the class arose out of the same alleged wrongful conduct).")

In *Patel v. Reata Pharms., Inc.*, a movant whose *losses* were solely from options transactions also bought stock *but* he "actually experienced a profit." 549 F. Supp. 3d 559, 565 (E.D. Tex. 2021). The Court discussed throughout that it found that "another factor has been presented that calls into question his typicality and adequacy: ***Massar made a material profit from his common-stock investments***." *Id*. at 568 (emphasis added). Unlike that movant, Mr. Minarik has a large loss. Dkt. No. 21-3.

*Micholle v. Ophthotech Corp.* involved an improper lawyer made group that traded extensively in call and put options, another movant that was denied for errors in submissions, and an institutional investor that was ultimately appointed as lead plaintiff. 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018). In contrast, Mr. Minarik is not party

to an unrelated group, sold put options, and his filings are free of the errors and issues identified in *Micholle.*

Finally, options are often included in securities class actions as "a put options seller, upon proof of market efficiency in the underlying stock, is generally entitled to a rebuttable presumption of reliance." *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1329 (N.D. Ga. 2007) (citing cases). Indeed, this is true for options traders—just as it is true for stock traders—from the filing of the complaint through to resolution, including at the more searching class certification stage. *E.g.*, *In re Commc'ns Sys., Inc.*, 2003 WL 21383824, at *4–5 (N.D. Cal. Feb. 24, 2003) (certified class including stock and options); *McIntire v. China Media Express Holdings, Inc.*, 38 F. Supp. 3d 415, 421 (S.D.N.Y. 2014) (same); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *3 (E.D. La. Mar. 2, 2009) (certified settlement class including stock and options).

## III.    MR. MINARIK SHOULD BE APPOINTED LEAD PLAINTIFF

When two investors' financial stakes are essentially the same, the Court must choose between them by determining which contender better satisfies Rule 23(a)'s adequacy and typicality requirements. As courts have explained, a "comparative inquiry" is appropriate to determine who among them "is the most adequate." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 816 n.6 (N.D. Ohio 1999); *see also In re BP, PLC Sec. Litig*, 758 F. Supp. 2d 428, 435 n.6 (S.D. Tex. 2010); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1338–39 (N.D. Ala. 2000). The statute's text supports focusing on the Rule 23(a) factors in this situation. The PSLRA requires courts, when faced with competing motions for appointment as lead plaintiff, to determine whether the contenders will "fairly and

adequately" represent the class and whether they are "subject to unique defenses" that make their claims atypical. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

As explained *supra*, Ms. Fisher and the Fund's argument—that Mr. Minarik should not be considered for appointment as lead plaintiff for the class due to his options trading—is without merit. The Court should therefore look to the movants with the largest financial interest. Given the negligible difference between Mr. Minarik and Dr. Mein's respective financial interests, the Court should then appoint the movant who best satisfies Rule 23's typicality and adequacy requirements. As demonstrated in his opposition papers, Mr. Minarik best satisfies those requirements and should therefore be appointed as lead plaintiff.

\*       \*       \*

Should the Court determine that separate lead plaintiffs are required for options and stock, Mr. Minarik respectfully requests that the Court appoint Mr. Minarik to lead the options class.

## IV.    CONCLUSION

For the foregoing reasons, including those stated in Mr. Minarik's opening and opposition papers, Mr. Minarik's motion should be granted in its entirety and the competing motions should be denied.

DATED: February 6, 2024                    Respectfully submitted,

*William B. Federman*_____
**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

*[Proposed] Liaison Counsel for the Class*


**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*

10