# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELO VENTRILLO JR., Individually and on behalf of all others similarly situated, | Case No. 5:23-cv-01019-F |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION OF AMY FISHER TO CONSOLIDATE THE RELATED ACTIONS, APPOINT LEAD PLAINTIFF AND APPROVE SELECTION OF LEAD COUNSEL** |
| v. | |
| PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, | |
| Defendants. | |
| COREY SCHOENROCK, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:24-cv-00012-F |
| Plaintiff, | |
| v. | |
| PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, | |
| Defendants. | |
| JOSEPH MINARIK, Individually and on behalf of all others similarly situated, | Case No. 5:24-cv-00014-F |
| Plaintiff, | |
| v. | |
| PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE, | |
| Defendants. | |
| CHRIS H. CALOTO, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:24-cv-00019-F |

Plaintiff,

v.

PAYCOM SOFTWARE, INC., CHAD
RICHISON, and CRAIG BOELTE,

Defendants.

## I.    INTRODUCTION

As demonstrated in her initial motion and response papers, Ms. Fisher, who suffered approximately $348,693.47 in losses on Paycom common stock purchases in reliance on Defendants' fraudulent statements and omissions, is the presumptive lead plaintiff. ECF Nos. 27-29, 40. In particular, while Dr. Mein and Mr. Minarik purport to have larger financial interests than Ms. Fisher, the Court cannot appoint either as Lead Plaintiff because are both atypical movants who suffered the entirety of their losses on put option contracts. ECF No. 40 at pp. 4-7. Additionally, Ms. Fisher also made a *prima facie* showing of typicality and adequacy since her claims are identical to other class members and there are no conflicts of interest. ECF No. 29-1.

To rebut the presumption that Ms. Fisher should be appointed lead plaintiff, it is now incumbent upon the competing movants to come forward with "proof" that Ms. Fisher either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The competing movants have failed to do so, raising two spurious challenges.

*First*, Michigan Laborers attempts to argue that Ms. Fisher was a net seller and profited on her investments that are at issue. ECF No. 41 at pp. 6-10. But this argument is entirely premised on a contrived elongated class period manufactured by Michigan Laborers' counsel to provide its client with a financial interest in the litigation. Since the amended elongated class period is without factual basis, so too does fail Michigan Laborers' net seller/net gainer challenge.

***Second***, Minarik and Michigan Laborers argue that Ms. Fisher has failed to provide sufficient details regarding her background. ECF No. 41 at pp. 10-13. But as explained below, courts regularly reject the notion that detailed background information beyond the information supplied in a PSLRA certification is required by a lead-plaintiff movant to show that he or she is adequate and typical. *See, e.g.*, *Patel v Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 570 (E.D. Tex. 2021). And in any case, concurrent with this filing, Ms. Fisher has supplied a declaration providing detailed information that is more than sufficient to address the specious claims raised by the competing movants. *See, Tollen v. Geron Corp.*, 2020 WL 2494570, at *4 (N.D. Cal. May 14, 2020) (movant's declaration submitted on reply providing background information resolved competing movants' challenges).

Because no movant has provided proof to rebut the presumption, Ms. Fisher's motion should be granted in its entirety.

## II.     ARGUMENT

### A.     Michigan Laborers' Net Seller/Net Gainer Argument is Based on a Contrived Elongated Class Period

Michigan Laborers erroneously claims that Ms. Fisher sold more shares than she purchased and made money on her Paycom transactions during the alleged fraudulent period in this litigation. ECF No. 41 at pp. 7-8. But that argument and the cited loss and sale figures are based on a frivolous, expanded class period contrived by Michigan Laborers' counsel prior to the Lead Plaintiff deadline alleging that the fraud somehow commenced on February 9, 2022—nearly 15 months before the May 3, 2023 start of the originally pled, six-month Class Period. *See* Ms. Fisher's Response Brief (ECF No. 40) at

pp. 7-11. Under the original and proper May 3, 2023 through November 1, 2023 class period, Ms. Fisher purchased net shares of 4,310 and suffered losses of $348,693.47. ECF No. 29-2.

Providing no factual support for the elongated class period, Michigan Laborers suggests that the Court should just blindly accept the longest alleged class period without further inquiry "because a shorter class period would have the effect of reducing the class size and limiting the potential amount of damages." ECF No. 41 at p. 9. But case law counsels against accepting without questioning an amended elongated class period since it presents a "risk," "as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (noting that courts should not "simply adopt[] the most inclusive class period [as it] might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination").

The risk of rewarding gamesmanship and class period manipulation by accepting without inquiry the amended elongated class period is particularly acute here. Michigan Laborers purchased all its Paycom shares between February and November 2022. *See* Michigan Laborers' PSLRA Cert. and Transactions (ECF No. 30-1, at pp. 11-13). Having failed to purchase any Paycom shares during the original Class Period, Michigan Laborers had no financial interest in the litigation until its counsel filed the *Calato* complaint with an amended elongated class period.

- 3 -

It is for these reasons that while courts generally deem it appropriate to adopt the most expansive complaint at the lead plaintiff stage, they refuse to do so where, as here, the complaint fails to allege any facts that would support amended elongated class period. *See*, *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at *3 n.25 (S.D.N.Y. May 5, 2008) (rejecting class period wholly unsupported by any facts alleged in the complaints); *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *3 (S.D.N.Y Apr. 5, 2016) (rejecting more expansive complaint because it did "not identify any particular communication partially disclosing allegations of fraud prior to October 30, 2015, but instead relies on unsupported allegations."); s*ee, also, Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (refusing to engage in the "nonsensical exercise of calculating 'losses' occurring . . . before the fraud allegedly began.").

As explained in Ms. Fisher's Response Brief (ECF No. 40 at pp. 7-11), the *Calato* and *Schoenrock* complaints upon which Michigan Laborers relies upon allege no facts that support the notion that Defendants' alleged fraud commenced on February 8, 2022. To the contrary, the central theory of the fraud, the principal scienter evidence and the corrective disclosure alleged in all the complaints dictate that the alleged misrepresentations and omissions concerning Beti occurred throughout 2023 (*id*), well after Michigan Laborers purchased its shares. ECF No. 30-1, at 11-13. Thus, if Michigan Laborers were appointed Lead Plaintiff, its amended elongated class period will be swiftly rejected at the motion to dismiss stage, leaving the Class with a Lead Plaintiff without standing and subjecting them to the risk of substantial delay and expiration of timely, viable claims.

The cases Michigan Laborers cite where the courts accepted the longer alleged class period are unavailing. ECF No. 41 at p. 9, citing *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) and *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008). Unlike here, in both those cases, the movant advocating for the longer alleged class period set forth a proper factual basis for the longest potential class period. *Eichenholtz*, 2008 WL 3925289, at *3 (acknowledging that extending front end of class period to cover November 1, 2006 to March 1, 2007 since corporate defendant "restated financial statements that affect exactly this period."); *Marcus*, 2014 WL 11394911, at *2 (expressing no concern over "Long Class Period").

Accordingly, Michigan Laborers' net seller/net gainer challenge as to Ms. Fisher based on the amended elongated class period should be rejected.

**B.    Ms. Fisher Made a Prima Facie Showing of Typicality and Adequacy**

Ms. Fisher's Certification, filed with her motion for lead plaintiff, meets the stated requirements of the PSLRA:

> (i) states that the plaintiff has reviewed the complaint and authorized the filing of the lead plaintiff motion;
>
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title;
>
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
>
> (iv) sets forth all of the transactions of the plaintiff in the securities that are the subject of the complaints during the class periods specified in the complaints;

(v) identifies any other action under this title, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and

(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

15 U.S.C. § 78u-4(a)(2)(A). *See also* ECF No. 29-1.[1] This presents a *prima facie* showing that she is qualified under Federal Rule of Civil Procedure 23 sufficient to establish that she is the presumptive lead plaintiff. ECF No. 29-1.

Michigan Laborers and Minarik suggest that Ms. Fisher was obligated to provide additional background information beyond her certification. ECF No. 38 at pp. 8-9; ECF No. 41 at pp. 10-13; But "[c]ourts regularly reject the notion that detailed background information is required by a lead-plaintiff movant to show that he or she is adequate and typical." *Reata Pharms., Inc.*, 549 F. Supp. at 570, *citing Kasilingam v. Tilray, Inc.*, 2020 WL 4530357, at *3 (S.D.N.Y. Aug. 6, 2020) (rejecting claims that movant provided insufficient personal information and holding that "the Court is not required to peer into these questions where it otherwise finds adequacy"). *See also Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (rejecting "conclusory assertions" that "there is no evidence" movant "has any experience in business affairs that would qualify them" to oversee litigation); *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at *5

---

[1] Contrary to Michigan Laborers' contention (ECF No. 41 at p. 13, n.10), Ms. Fisher's certification is not deficient as it provides all her transactions in Paycom securities under each alleged class period in the attached schedules. ECF No. 29-1. As demonstrated by the absence of such transactions in the schedules attached to her certification, Ms. Fisher did not trade in Paycom options during any of the alleged class periods. ECF No. 29-1.

(S.D. Fla. Oct. 15, 2021) (rejecting "unfounded" objections and holding that movant who lost "significantly more" than competing movants and attested that he was "willing" to litigate the action on behalf of a class whose losses arose from a "common course of conduct" should be appointed lead plaintiff).

Indeed, in challenging Ms. Fisher's *prima facie* showing, Michigan Laborers and Minarik rely on readily distinguishable cases in which either (i) another adequate and typical movant claimed a larger financial interest,[2] or the movant in question was faced with fundamental and readily apparent conflicts.[3] Neither of these circumstances is present here.

In any event, while it is unnecessary under the requirements of the PSLRA, Ms. Fisher has provided a declaration filed concurrently herewith detailing her background,

---

[2] *See, e.g., In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447 (C.D. Cal. 2002) ("The Court does not presume that the Gads are best-suited to act as lead plaintiffs, as they claim losses of $2.6 million, in contrast to the pension funds' claimed losses of approximately $10 million."); *Piven v. Sykes Enter., Inc.*, 137 F. Supp. 2d 1295, 1304 (M.D. Fla. 2000) (movant at issue was not the presumptive lead plaintiff based on its asserted losses).

[3] *See, e.g., Camp v. Qualcomm Inc.*, 2019 WL 277360, *3 (S.D. Cal. 2019) (finding that a movant who "failed to include any basic details about himself" in his motion also had "significant errors in the transaction records and loss calculations accompanying [his] motion"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, *6 (S.D.N.Y. 2019) (finding that a movant who "provided the Court with little to go on with respect to their alleged capacity to manage this litigation" had also "exaggerated loss totals" by "some 34%" in their initial submission and delayed filing a correction); *In re The Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019), reconsideration denied, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) (where movant was "determined to avoid" providing information at the request of the court and misled the court knowingly omitting $7.5 million in class period sales from their certification); *Smajlaj v. Brocade Communications Systems Inc.*, 2006 WL 7348107 at *2 (N.D. Cal. Jan. 12, 2006) (hedge fund refused to turn over documentation of its authority to litigate the class action, and there were continuous "new" revelations "that appear to expose the somewhat complicated and intricate structure of the company.").

education, and investment experience. *See* Declaration of Lucas E. Gilmore in Further Support of Motion of Amy Fisher to Consolidate the Related Actions, Appoint Lead Plaintiff and Approve Selection of Lead Counsel ("Gilmore Decl."), filed herewith, at Ex. A. Ms. Fisher is 49 years old, presently resides in Owasso, Oklahoma, holds a bachelor's degree from Grand Canyon University and has approximately 5 years of investment experience. Gilmore Decl. at Ex. A at ¶2. Ms. Fisher further details her vetting of counsel and her commitment to fulfil the Lead Plaintiff's obligations. Gilmore Decl. at Ex. A at ¶¶5-7. Had the competing movants informally requested such basic information in connection with their responses, Ms. Fisher's counsel would have readily provided it to them.

Michigan Laborers also suggests that it is somehow inappropriate for Ms. Fisher to submit a declaration detailing her background and directly responding to Michigan Laborers' adequacy challenges on reply. ECF No. 41 at p. 12. But courts disagree since the competing movant put the matter at issue in their oppositions. *Geron Corp.*, 2020 WL 2494570, at *4  (considering movant's supplemental declaration providing background information in response to competing applicants' challenges); *Blake v. Canoo Inc.*, 2022 WL 599504, at *5 (C.D. Cal. Feb. 18, 2022) (same).

Michigan Laborers also speculates that Ms. Fisher may be a current insider at Paycom, and that she may have entered into an agreement with Paycom prohibiting her from prosecuting this litigation. ECF No. 41 at pp. 11-12. While Ms. Fisher previously worked as a Client Relations Representative for Paycom, she left that position more five years ago in June 2018 to homeschool her children, well before the alleged Class Period.

*See* Gilmore Decl. at Ex. A at ¶¶2-3.[4]   Based on the facts of the case, her role with the Company and that she left the Company more than five years ago, Ms. Fisher has no material, non-public information relevant to her investments or the prosecution of the litigation. *Id*. Moreover, Ms. Fisher  is not bound by any agreements that would bar her ability to pursue claims against Paycom arising from her investments at issue. *See* Gilmore Decl. at Ex. A ¶4.

Finally, Michigan Laborers cites to *In re Michaels Stores, Inc. Sec. Litig*., 2003 WL 27391238 (N.D. Tex. Oct. 24, 2003) and *Lifschitz v. Hexion Specialty Chems., Inc*., 2009 WL 734040 (S.D.N.Y. Mar. 18, 2009) for the proposition that Ms. Fisher was obligated to affirmatively disclose in her moving papers her prior employment with Paycom, which ceased over a half a decade ago. ECF No. 40 at 12, n.9. But neither of the cases makes such a holding. Rather, in *Lifschitz*, the movant failed to disclose he was a ***current officer*** of the company, which created an appearance of a conflict of interest. 2009 WL 734040, at *2 (noting that movant was a Vice President of corporate defendant through a recent merger). Similarly, in *In re Michaels Stores,* the movant was not only a ***current employee*** of the corporate defendant, but she also skirted questions posed to her directly concerning her employment, lied about not possessing material non-public information about her employer relevant to the suit, and had personal contact with one of the individual defendants. 2003 WL 27391238, at *2. These facts do not exist here.

---

[4] As explained in her declaration, Ms. Fisher's LinkedIn Profile which currently identifies her as being presently employed by Paycom is incorrect. Ms. Fisher did not update her LinkedIn profile and stopped using the platform when she left Paycom in June 2018 to homeschool her children.

**C.    At a Minimum, the Court Should Appoint Ms. Fisher as an Additional Lead Plaintiff for the Proper Alleged Class Period**

As set forth in her response, Dr. Mein and Mr. Minarik are improper representatives for any class period because they suffered all their losses from put options transactions. ECF No. 40 at pp. 4-7. And Michigan Laborers has no financial interest or standing to assert claims during the proper alleged class period of May 3, 2023 – November 1, 2023. Id. at pp. 7-11. Thus, in event the Court were inclined to appoint one of the options investors or Michigan Laborers as lead plaintiff, to protect the Class, Ms. Fisher respectfully requests that the Court appoint Ms. Fisher as an additional lead plaintiff to represent and protect the class of investors who purchased Paycom shares during the proper alleged class period. *See*, *e.g.*, *Luongo v. Desktop Metal, Inc.*, 21-cv-12099-IT, 2022 WL 2532498 (D. Mass. July 7, 2022) (appointing one movant lead plaintiff of shorter alleged class period and a separate movant the lead plaintiff of amended extended class period).

## III.    CONCLUSION

For all the foregoing reasons, Ms. Fisher respectfully requests that this Court enter an order: (1) consolidating the Related Actions; (2) appointing her to serve as Lead Plaintiff in this Action; and (3) approving her selection of Lead and Liaison Counsel for the Class.

Dated:  February 6, 2024                    Respectfully Submitted,

By _____*/s/ William B. Federman*_____
        WILLIAM B. FEDERMAN, OBA #2853

William B. Federman, OBA #2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com

Reed Kathrein (*pro hac vice* forthcoming)
Lucas E. Gilmore (*pro hac vice* forthcoming)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Movant Amy Fisher*