UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANGELO VENTRILLO JR., Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 5:23-cv-01019-F |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| PAYCOM SOFTWARE, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| COREY SCHOENROCK, Individually and on Behalf of All others Similarly Situated, | ) ) ) | No: 5:24-cv-00012-F |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| PAYCOM SOFTWARE, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

MICHIGAN LABORERS' PENSION FUND'S REPLY IN SUPPORT OF MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

4872-5692-1506.v1

JOSEPH MINARIK, Individually and on behalf of all others similarly situated,

               Plaintiff,

    vs.

PAYCOM SOFTWARE, INC., et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No: 5:24-cv-00014-F

CHRIS H. CALOTO, Individually and on Behalf of All Others Similarly Situated,

               Plaintiff,

    vs.

PAYCOM SOFTWARE, INC., et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No: 5:24-cv-00019-F

4872-5692-1506.v1

## I.   INTRODUCTION[1]

Of the remaining lead plaintiff movants, only the Pension Fund satisfies the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Because Dr. Mein and Mr. Minarik acquired 100% of their Paycom stock via option assignments, they are not typical of the class.  *See Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at *3 (D. Colo. Aug. 16, 2023); ECF 41 at 2-6.  Ms. Fisher is similarly disqualified from contention because she is a net gainer and net seller in the proper, longest class period and she provided virtually no information about herself.  *Id.* at 6-13.  No competing movant has substantively opposed the Pension Fund's motion, much less provided any of the required proof to rebut the most adequate plaintiff presumption in the Pension Fund's favor.

It is axiomatic that "[f]or the purpose of calculating losses in determining the proper lead plaintiff in securities class actions, courts use the most inclusive class period." *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *5 (N.D. Ill. Oct. 8, 2019).  Instead, relying either on an intentional rewriting of the *Caloto* and *Schoenrock* complaints or a genuine misunderstanding of them, Ms. Fisher asks the Court to ignore explicitly-pled allegations. *See* ECF 40 at 7-11.  But contrary to Ms. Fisher's arguments – which uniquely benefit her to the detriment of much of the putative class – the *Caloto* and *Schoenrock* complaints plainly plead colorable theories of fraud relating to defendants allegedly concealing that: (1) Paycom relied on significant one-off payroll correction fees; (2) the increased adoption of Beti was

---

[1]   Counsel for the Pension Fund recognizes that reply briefs are "optional and not encouraged" and respectfully submits this reply only for the purpose of responding to arguments raised by competing movants for the first time on opposition.  LCvR7.1(i).

cannibalizing these fees; and (3) increased Beti adoption was decreasing Paycom's gross profit and margins. *See Caloto*, ECF 1 at ¶37; *Schoenrock*, ECF 1 at ¶42. As such, at this early stage of the litigation, the Court should adopt the longest class period.

## II.   ARGUMENT

### A.   The Court Should Reject Ms. Fisher's Attempt to Shrink the Class's Damages

Ms. Fisher argues that the Court should ignore the well-pled allegations of two of the four related actions and evaluate movant losses based on the shortest alleged class period. *See* ECF 40 at 7-11. But this endeavor falls short, as the lead plaintiff proceedings to date and the allegations in the *Caloto* and *Schoenrock* complaints confirm.

All lead plaintiff movants except Ms. Fisher agree that the longest class period should apply at the lead plaintiff stage in this case. *See* ECF 17 at 1 n.1 (Dr. Mein noting that he "adopts the most-inclusive Class Period defined in the *Schoenrock* Action, which is appropriate at this stage of the litigation."); 20 at 2 n.1 (Mr. Minarik noting that "[a] more inclusive class period is favored at the lead plaintiff stage."); 23 at 2 (Ms. Herbert defining the class period as "between February 9, 2022 and November 1, 2023."); 30 at 4 n.1 ("[T]he Pension Fund uses the most inclusive class period of the Related Actions."). In accord, the case law is overwhelmingly clear that "'the class . . . should be defined as the broadest, most inclusive potential class.'" *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (noting that this assumption "makes some sense, because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had

- 2 -

the opportunity to develop the record"); *In re BP, PLC Sec. Litig.,* 758 F. Supp. 2d, 428, 434 (S.D. Tex. 2010) ("For purposes of selecting a lead plaintiff, the Court will use the longest noticed class period unless the factual allegations supporting that period are 'obviously frivolous.'").[2]  This "approach respects the PSLRA's command to identify 'the broadest, most inclusive potential class.'"  *Oakland Cnty. Voluntary Emps. Beneficiary Ass'n v. Generac Holdings Inc.*, 2023 WL 9511520, at *3 (E.D. Wis. May 30, 2023).  To the Pension Fund's counsel's knowledge, no district court in the Tenth Circuit has ever refused to adopt the longest class period at the lead plaintiff stage where the complaint contained ***at least an allegation*** that a violation of the federal securities laws occurred as of the start of that longer class period.[3]

---

[2]  *See also Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 2016 WL 1625774, at *4 (N.D. Tex. Apr. 25, 2016) (adopting longest class period); *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) ("Courts have almost universally held that the longest, most inclusive class period should be used to determine which lead plaintiff movant has the largest financial interest in the relief sought by the class.") (collecting cases); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) (adopting longest class period and noting that "[n]arrowing the class period is more appropriate at a later stage of litigation, with participation from the Defendant"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) ("For the purpose of determining lead plaintiff, I find that the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members . . . ."); *In re Star Gas Sec. Litig.*, 2005 WL 818617, at * 7 (D. Conn. Apr. 8, 2005) (finding that "it would be premature" to use a shortened class period at the lead plaintiff stage, and that the "appointed lead plaintiffs can decide how to frame their amended complaint in terms of an appropriate class period in their best judgment").  Unless otherwise noted, all emphasis is added and citations are omitted.

[3]  *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934 (D. Utah Mar. 10, 2021), the only opinion the Pension Fund's counsel could identify in which a court in the Tenth Circuit refused to accept a movant's allegations of a longer class period, is easily distinguishable.  There, (1) the plaintiff who first filed the longer class period amended his complaint to shorten the class period; and (2) there were no misstatements or omissions

- 3 -

Not deterred by the weight of law (and competing movants) against her, Ms. Fisher avers that this Court should be the first to do so for one reason: under the longest class period, Ms. Fisher made money on her investments in Paycom stock, making her radically atypical of the class and disqualifying her from contention for appointment as lead plaintiff. *See Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 718 (S.D. Tex. 2021) (disqualifying a movant who was a net seller and net gainer); ECF 41 at 6-9. "Indeed, it is unclear why [Ms. Fisher] would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages [***by more than $1 billion***], unless it was in the best interest of [Ms. Fisher] only." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at \*2 (N.D. Cal. Aug. 22, 2008).[4] As such, the Court should not reward Ms. Fisher's willingness to abandon the class for her own benefit.

The allegations in the *Caloto* and *Schoenrock* complaints further support adoption of the longest class period. Ms. Fisher complains that "no movant or named plaintiff . . . has pled a colorable legal theory that can justify starting the class period before May 3, 2023."

---

alleged on the start date of the longer period (which is likely why the plaintiff amended his complaint before the lead plaintiff deadline). For those reasons, the court found that "no movant has alleged any facts that would support a colorable theory of liability for a class period starting before April 30, 2020." *Id.* at \*4. In contrast, here, both the *Caloto* and *Schoenrock* complaints allege misstatements/omissions as well as ample facts to conclude that the longer class period is proper here. *See infra* at 4-7.

[4] *See also Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at \*7 (E.D. Tex. Feb. 28, 2014) ("At this stage of the litigation, a shorter class period would have the effect of reducing the class size and limiting the potential amount of damages. It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [Ms. Fisher] lead plaintiff.").

- 4 -

ECF 40 at 8.  But Ms. Fisher's argument is based on a misunderstanding of the full theory of fraud in this case and a selective reading of the complaints.  Specifically, Ms. Fisher makes three points in arguing against accepting the allegations of the *Caloto* and *Schoenrock* complaints: (1) a class period beginning on February 9, 2022 "conflicts with the central theory of the fraud in this litigation"; (2) the complaints "include no allegations suggesting that Defendants knew or should have been aware Beti would cannibalize and outstrip other revenues as early as February 9, 2022"; and (3) there is a "complete mismatch between the new false and misleading statements in *Calato* and *Schoenrock* and the alleged corrective disclosure event."  *Id.* at 9-10.  Each argument fails.

The *Caloto* and *Schoenrock* complaints each allege that after market close on February 8, 2022, Paycom announced strong fourth quarter 2021 financial results, attributing the success to its "'employee usage strategy, where employees are now able to do their own payroll with Beti™, [that] helped deliver record annual revenue retention.'" *Caloto*, ECF 1 at ¶15; *Schoenrock*, ECF 1 at 20.[5]  The complaints further allege that during a conference call with analysts, Paycom CEO, defendant Chad Richison, stated that Paycom "'continue[d] to have a lot of success deploying BETI.'" *Caloto*, ECF 1 at ¶16; *Schoenrock*, ECF 1 at ¶21. On this news, the price of Paycom stock increased approximately $30 per share.  *Caloto*,

---

[5]   Paycom rolled out Beti in July 2021 "as an enhancement to the Company's then-existing payroll offerings." *Caloto*, ECF 1 at ¶13.  Beti was touted by defendants as a significant additional product offering that "'further automates and streamlines the payroll process by empowering employees to do their own payroll, increasing efficiencies and reducing errors,'" adding that "'[e]mployees already manage all other components of their paychecks, including timecards, expenses, PTO requests and benefits; now they have the convenience within Paycom to process their own payroll, too.'" *Id.*

4872-5692-1506.v1

ECF 1 at ¶17; *Schoenrock*, ECF 1 at ¶22. Ms. Fisher contends that these disclosures fail to pass muster because "the concealed truth in this litigation . . . is that throughout **2023** [defendants] knew, but failed to disclose, that Beti product was eliminating certain billable items and leading to cannibalization of the Company's services and revenues." ECF 40 at 9. But nowhere in either the *Caloto* or *Schoenrock* complaints is there any allegation limiting defendants' knowledge of one-off payroll correction revenues and Beti revenue cannibalization in only 2023. To the contrary, the complaints explicitly state that on February 8, 2022, defendants "fail[ed] to disclose that as Paycom's payroll customers increased their adoption of Beti, how much they were paying for one-off services such as additional correctional payroll runs, much less how much the Company had been relying upon those additional one-off fees in the past to drive revenue growth and profit margins." *Caloto*, ECF 1 at ¶16; *Schoenrock*, ECF 1 at ¶21.[6] The complaints further allege that adverse information regarding Paycom's reliance on one-off payroll correction fees, Beti's cannibalization of that revenue, and Beti's effect of decreasing Paycom's gross profit margin "***was then known to defendants or recklessly disregarded by them***." *Caloto*, ECF 1 at ¶37; *Schoenrock*, ECF 1 at ¶42. Moreover, the complaints contain allegations that "by virtue of their receipt of information reflecting the true facts regarding Paycom, their control over, and/or receipt and/or modification of Paycom's allegedly materially misleading statements

---

[6]   By February 2022, Beti had already been rolled out to customers for more than six months. And, as the complaints allege, by May 3, 2022, Richison admitted that "'[a]lready well over 1/4 of our clients have implemented and/or in the process of implementing BETI.'" *Caloto*, ECF 1 at ¶19; *Schoenrock*, ECF 1 at ¶24. This bolsters the plausible allegations that by February 9, 2022, defendants had seen a significant adoption of Beti and were aware Beti posed a risk to the Company's one-off payroll correction revenue.

4872-5692-1506.v1

and/or their associations with the Company which made them privy to confidential proprietary information concerning Paycom, participated in the fraudulent scheme alleged herein." *Caloto*, ECF 1 at ¶41; *Schoenrock*, ECF 1 at ¶46.[7]

Ms. Fisher argues that the complaints cannot support allegations of fraud as early as February 9, 2022 because on October 31, 2023, Richison stated that "'[w]ith 10 months of data from increased Beti usage, we are incorporating the impact our clients' ROI achievement has on our model.'" *Caloto*, ECF 1 at ¶39; *Schoenrock*, ECF 1 at ¶44; ECF 40 at 9. Thus, according to Ms. Fisher's logic, defendants could not have known Beti was eating in to existing one-off payroll correction revenue because they only had 10 months of Beti data. *Id.* But this selective reading conveniently ignores much of the theory of wrongdoing alleged in the complaints. Ms. Fisher fails to realize that the complaints not only allege that Beti was cannibalizing existing revenue, but that defendants failed to disclose that the one-off payroll correction revenue ***existed at all***.[8] In fact, when Paycom revealed on October 31, 2023, that Beti was cannibalizing a portion of its services and

---

[7] Similar language was utilized by Ms. Fisher's counsel to support scienter allegations in their recently filed complaint in *Smith v. ChargePoint Holdings, Inc.*, No. 3:24-cv-00363-JSC, ECF 1 at ¶50 (N.D. Cal. Jan. 22, 2024) ("Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ChargePoint, their control over, and/or receipt and/or modification of ChargePoint's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ChargePoint, participated in the fraudulent scheme alleged herein.").

[8] The *Caloto* and *Schoenrock* complaints each allege that defendants failed to disclose that "Paycom had been relying upon a significant, but undisclosed, amount of one-off payroll correction fees to fuel its past outsized revenue growth." *Caloto*, ECF 1 at ¶37(a); *Schoenrock*, ECF 1 at ¶42(a). Ms. Fisher does not address these allegations.

- 7 -

unscheduled revenues, analysts were surprised to learn that Paycom relied on that one-off revenue.[9]  Further, while Richison stated that he was relying on "10 months of data from increased Beti usage," Ms. Fisher does not claim that defendants had no access to any data that would have alerted them to Beti's cannibalization.  But the complaints directly allege that this was "known to defendants" as early as February 2022.  *Caloto*, ECF 1 at ¶37; *Schoenrock*, ECF 1 at ¶42.

In a last ditch effort to limit the size of the class, Ms. Fisher argues that there is a "mismatch" between the alleged misstatements and the alleged corrective disclosure.  ECF 40 at 10.  This argument has been squarely rejected by this Court.  *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1265 (N.D. Okla 2007), *aff'd sub nom. In re William Sec. Litig.-WCG Subclass*, 558 F.3d 1130 (10th Cir. 2009) (Friot, J.) ("'*Dura* did not set forth any requirements as to who may serve as the source of the [corrective] information, nor is there any requirement that the disclosure take a particular form or be of a particular quality.  Thus, it is the inherent veracity of the information that is of paramount concern in *Dura*.  It is the exposure of the falsity of the fraudulent representation that is the critical component of loss causation.'").  Indeed, there is no "requirement that 'an alleged corrective disclosure must be the linguistic mirror image of the alleged fraud.'"  *Id.*  Here, the October 31, 2023, disclosure

---

[9]   A Jefferies analyst stated that "'*[w]hat we did not appreciate (and seems like investors as well) was that the costs incurred by companies was driving a meaningful revenue stream for PAYC*.'"  *Caloto*, ECF 1 at ¶40; *Schoenrock*, ECF 1 at ¶45.  A BofA Securities analyst stated that "'there will likely be *lingering questions surrounding how much after-the-fact payroll corrections were contributing to growth and what a sustainable LT growth rate looks like beyond C24*.'"  *Id.*  Similarly, a Wolfe Research analyst stated that "'*[o]ur biggest issue is that we cannot quantify the amount of recurring revenue associated with these seemingly redundant and non-value additive activities*.'"  *Id.*

4872-5692-1506.v1

revealed the falsity of defendants' prior statements (and put the market on notice of defendants' previous omissions) because, as defendants stated on October 31, 2023, not only was Beti eating into one-off payroll correction revenues, Paycom heavily relied on those one-off revenues. Both of these facts were unknown to investors and omitted by defendants at least as far back as February 9, 2022. As such, the *Caloto* and *Schoenrock* complaints articulate a highly credible theory of fraud and the Court should adopt the longer class period.

**B.      There Is No Basis (or Need) to Support a Separate Options Class**

Mr. Minarik asks to Court to consider appointing him to lead an options class. ECF 38 at 9. Mr. Minarik's failure to cite any cases in support of this proposition is not surprising as courts routinely deny a losing movant's bid to join as lead plaintiff of a subclass of securities. *See In re The Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *11 (N.D. Ill. 2019) (refusing losing movant's request to appoint it as lead plaintiff of a separate options class); *In re CenturyLink Sales Pracs. and Sec. Litig.*, 2018 WL 1902725, at *5 (D. Minn. Apr. 20, 2018) ("[T]he interests of the class are fully protected and there is no need to appoint separate leadership to assert the claims that Oregon has already been appointed to pursue."); *Ansfield v. Omnicare, Inc.* 2012 WL 12924531, at *5 (E.D. Ky. Mar. 12, 2012) ("The issue of class conflict is speculative at best, and it is therefore not necessary to create a separate subclass of investors at this stage of the litigation."); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006) (denying motion to appoint a co-lead plaintiff for options class because "'[t]he fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need

- 9 -

not satisfy all elements of standing with respect to the entire lawsuit'"). There is no reason (and Mr. Minarik has not pointed to any) to support appointment of a separate lead plaintiff here.

## III.   CONCLUSION

The Pension Fund has the largest financial interest and otherwise satisfies Rule 23's requirements. No movant has provided any of the "proof" necessary to rebut the presumption in favor of the Pension Fund. As such, the Pension Fund's motion should be granted.

DATED:  February 6, 2024                   Respectfully submitted,

                                           WHITTEN BURRAGE
                                           MICHAEL BURRAGE (OBA No. 1350)
                                           REGGIE WHITTEN (OBA No. 9576)


                                                  s/ Michael Burrage
                                           _____
                                           MICHAEL BURRAGE

                                           512 North Broadway Avenue, Suite 300
                                           Oklahoma City, OK 73102
                                           Telephone: 405/516-7800
                                           mburrage@whittenburragelaw.com
                                           rwhitten@whittenburragelaw.com

                                           Local Counsel

4872-5692-1506.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

WATKINS, PAWLICK, CALATI
  & PRIFTI, PC
LAUREN CRUMMEL
1423 East Twelve Mile Rd.
Madison Heights, Michigan 48071
Telephone:  248/ 658-0800
248/658-0801 (fax)
lcrummel@wpcplaw.com

Additional Counsel

- 11 -

4872-5692-1506.v1