# APPENDIX A

# STATEMENTS ALLEGED TO HAVE BEEN FALSE AND/OR MISLEADING

**Table of Contents**

False Statement ("S") No. 1 - ¶ 107................................................................................................ 1

S2 - ¶ 110 ...................................................................................................................................... 4

S3 - ¶ 112 ...................................................................................................................................... 7

S4 - ¶ 114 ...................................................................................................................................... 8

S5 - ¶ 117 ...................................................................................................................................... 9

S6 - ¶ 120 .................................................................................................................................... 10

S7 - ¶ 122 .................................................................................................................................... 11

S8 - ¶ 124 .................................................................................................................................... 12

S9 - ¶ 126 .................................................................................................................................... 15

S10 - ¶ 130 .................................................................................................................................. 16

S11 - ¶ 133 .................................................................................................................................. 17

S12 - ¶ 136 .................................................................................................................................. 18

S13 - ¶ 140 .................................................................................................................................. 19

S14 - ¶ 144 .................................................................................................................................. 21

S15 - ¶ 147 .................................................................................................................................. 22

S16 - ¶ 150 .................................................................................................................................. 23

S17 - ¶ 154 .................................................................................................................................. 24

| False Statement ("S") No. 1 - ¶ 107 | | Statement Category: §III.B.1. Client Acceptance of Beti | | |
|---|---|---|---|---|
| **Speaker(s):** Chad Richison | | **Date:** Feb. 8, 2022 | **Source:** | FY 2021 Earnings Call |

**False or Misleading Statement or Omission:**

"2021 was a very strong year for Paycom. **We extended our platform to the employee even further through innovations like Beti**, which enables employees to do their own payroll, **and we are seeing very strong adoption and record employee usage as measured by the DDX. Strong demand continues to bolster our sales momentum, and record new client sales in 2021 have positioned us to deliver another year of rapid growth in 2022**." ¶ 107.[1]

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S1 was false and misleading when made because throughout the Class Period, at least one-half of Paycom's installed base refused to adopt or use Beti and a significant number were leaving Paycom because Defendants were mandating they use it. Thus, Paycom did not have "strong demand" for, or "strong adoption" or "record employee usage" of, Beti and Paycom was not positioned for "rapid growth," as evidenced by: | 1. Defendant Richison was warned by Shelly Ballew, the head of the Beti go-to-market team prior to Beti's launch that existing customers would resist adopting Beti because it would require them to completely change their payroll processes. ¶¶ 194–98. |
| 1. The Beti go-to-market team created in April 2021 identified and discussed at length the risk that Beti represented so much change in payroll processes for clients that existing clients would be resistant to, and not want to adopt, Beti. ¶¶ 53, 55. | 2. By September 2021, CRRs began voicing concerns and complaints from existing clients about the push for all clients to adopt Beti when the clients did not want Beti. ¶¶ 71, 200. CWs 1, 2, 3, and 4 corroborated each corroborated that clients resisted adopting, paying for, or using Beti. ¶¶ 72, 75, 92–93. These concerns were conveyed up the reporting chain by CRRs' managers and by way of SaveOps, Lost Clients, and Retention Reports to Defendants Richison and Boelte, including that forcing clients to adopt Beti was destroying relationships with the client accounts. ¶¶ 73–77, 94, 99, 199–200, 208, 212–13. |
| 2. CW3 recalled that the introduction of Beti meant "another step in an already complicated process," which was not easy for clients to adopt. ¶ 72. | |
| 3. CW4 recalled that at least 30% of new clients were resistant or objected to adopting Beti. ¶ 72. | 3. CW2 reported that Defendant Richison held a national sales training meeting in Aspen, Colorado in October 2021 during which CW2 and other sales personnel discussed with Richison the massive pushback CRRs were getting from existing clients towards adopting Beti. ¶¶ 93, 201. |
| 4. Approximately half of Paycom's existing clients were opposed to adopting and using Beti. ¶ 69. CW1 stated that existing clients were not happy being billed for services that they did not want to receive, like Beti. ¶ 75. | 4. Defendants admitted receiving and reviewing throughout the Class Period, Usage Reports, Retention Reports, Lost Clients |

---

[1] Citations to "¶_" refer to paragraphs of the First Amended Complaint for Violations of the Federal Securities Laws ("Complaint," ECF No. 77.). Capitalized terms shall have the same meaning as in the Complaint. Statements that are alleged to be false or misleading are bolded; the remaining statements are provided for context.

PLFS' APP'X A

| False Statement ("S") No. 1 - ¶ 107 | Statement Category: §III.B.1. Client Acceptance of Beti |
|---|---|

5. CW2 and CW4 reported that, upon introducing Beti in July 2021 and continuing throughout the Class Period, Paycom required CRRs to attempt to force all existing clients to purchase and use Beti by the end of 2021, which destroyed the CRRs' relationships with existing clients. ¶¶ 67–68, 71. This drove a substantial and increasing number of clients away from Paycom throughout the Class Period, resulting in worsening retention rates. ¶¶ 71, 91–94, 96, 101. Paycom's loss of revenue from client attrition in 2022 was equal to the cross-selling revenues generated by the CRRs that year. ¶ 98.

6. CW2 confirmed that the Chief Sales Officer and Defendant Richison held a national sales training meeting in Aspen, Colorado in October 2021, wherein Richison acknowledged that Paycom was encountering substantial pushback from existing clients to using Beti, which had begun soon after Beti debuted in July 2021. ¶ 93.

7. According to CW4, it was commonly known within Paycom that if an existing client did not want to use Beti, Defendants were willing to let that client go. ¶ 56. As early as April 2021, in response to risks raised by the Beti go-to-market team prior to launch, Richison maintained the attitude within Paycom that "if a customer doesn't want to automate their payroll by adopting Beti then we don't want them—we know what's best for them." *Id.* Indeed, on October 31, 2023, Defendant Boelte publicly admitted that Paycom was making intentional "strategic … client value decisions," later described as including forcing clients' "appropriate usage of our software [Beti]," which drove attrition of clients who were resistant to using Beti and thereby hurt Paycom's current and future revenue growth rates. ¶¶ 165, 168–69.

8. CW1 and CW2 recalled that client attrition was observed within multiple Paycom departments, including the entire

Repots, and Save Opportunity Reports. ¶¶ 208–09. CWs 2 and 3 likewise confirmed Defendants received and discussed weekly Retention Reports, Lost Clients Reports, and SaveOps Reports throughout the Class Period, which kept the Defendants apprised of Paycom's retention metrics and revenue attrition. ¶¶ 43, 45. CW4 knew that Defendant Richison reviewed the Lost Clients Report because CW4 specifically recalled Richison making a reference to one of CW4's clients who appeared on the Report in 2021. ¶ 45. As corroborated by CWs 1, 2, 3, and 4, throughout the Class Period, these reports showed increasing client attrition due to nearly half of clients being opposed to being forced to adopt Beti. ¶¶ 42–46, 92, 94, 116.ii, 212–13.

5. Defendant Richison was aware of clients' resistance and lack of usage of Beti through his deep involvement with Beti and the Beti rollout, especially given Beti was Richison's idea. ¶¶ 204, 207.

6. The Individual Defendants made frequent public statements about both Beti adoption and usage rates, demonstrating they closely tracked these two crucial metrics, and were aware of existing clients' resistance to Beti and that they were leaving Paycom. ¶¶ 219–21.

7. Defendants later admitted at the end of the Class Period on October 31, 2023 that their decision to push Beti upon clients, despite the known impacts, were intentional, purported "strategic revenue decisions" and "strategic performance and client value decisions" that focused on what Defendants "feel [is] best for our long-term relationship with our clients" at the expense of revenue growth. ¶ 217.

8. The Individual Defendants were motivated under Paycom's Long-Term Incentive Plan to inflate the price of Paycom stock throughout the Class Period by maintaining the appearance the Company's revenue retention rate remained high to meet their compensation and bonus goals. ¶¶ 226–27.

PLFS' APP'X A

| False Statement ("S") No. 1 - ¶ 107 | Statement Category: §III.B.1. Client Acceptance of Beti |
|---|---|
| sales department by October 2021. ¶¶ 92–93. Thus, throughout the Class Period, Lost Clients Reports showed an increasing number of clients terminating their service with Paycom. ¶ 212. Similarly, the SaveOps Reports showed an increase in clients who were dissatisfied and at risk of ending their contract with Paycom. Both the Lost Clients Report and the SaveOps Report specified that opposition to Beti was causing the increase in the clients who had ended or were at risk of ending their service with Paycom. ¶¶ 42, 212. Defendants confirmed the CWs' accounts when they reported in February 2023 that Paycom had only converted "around 50%" of *all* clients to Beti and by June 2023, purportedly just over that—a far cry from Richison's internal deadline to have *all existing* clients on Beti by the end of 2021. ¶¶ 67, 97, 146.<br><br>9. Net customer growth significantly declined after launching Beti, reflecting Paycom's undisclosed increasing loss of existing clients. ¶ 188 (reporting net customer growth of 49% in 2020 compared to negative 90% growth by 2023). | |

| S2 - ¶ 110 | | | Statement Category: §III.B.2. Customer & Revenue Retention | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | Feb. 8, 2022 | **Source:** | FY 2021 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**Raimo Lenschow**

*Barclays Bank PLC, Research Division – MD & Analyst*

Congrats to a great finish to the year. Chad and Craig, I had like 2 questions. One was on the retention rates. So 94% is kind of again up from last year, very, very strong especially considering where you're playing in the market. Can you talk a little bit about the drivers there? And is that kind of -- how are you thinking about this number going forward?

<div align="center">* * *</div>

**Chad R. Richison**

*Paycom Software, Inc. – Founder, President, CEO & Chairman of the Board of Directors*

<div align="center">* * *</div>

And answer to that question, it's all really driven by usage. The more success a client has using our products, the greater the return on the investment they're achieving, and that makes them want to stay with us longer. And so how high can it go? Obviously, at some point, you do have to look at you're always going to have a certain number of clients that could be bought, sold and merged. But I -- we're very ambitious with that number. **We're seeing a lot of satisfaction across the client base. So I don't -- I wouldn't necessarily say we're done with our retention aspirations, but we feel really good by being able to raise it again**. ¶ 110.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S2 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and many were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, Paycom was not seeing "a lot of satisfaction" across its existing client base and Paycom's client and revenue retention was declining, not poised to increase, as evidenced by: | 1. Defendants admitted receiving and reviewing throughout the Class Period, Usage Reports, Retention Reports, Lost Clients Repots, and Save Opportunity Reports. ¶¶ 208–09. CWs 2 and 3 likewise confirmed Defendants received and discussed Retention Reports, Lost Clients Reports, and SaveOps Reports *weekly* throughout the Class Period, which kept the Defendants apprised of Paycom's retention metrics and revenue attrition. ¶¶ 43, 45. CW4 knew that Defendant Richison reviewed the Lost Clients Report because CW4 specifically recalled Richison making a reference to one of CW4's clients who appeared on the Report in 2021. ¶ 45. As corroborated by CWs 1, 2, 3, and 4, throughout the Class Period, these reports showed increasing client attrition due to nearly half of clients being opposed to being forced to adopt Beti. ¶¶ 42–46, 92, 94, 116.ii, 212–13. |
| 1. According to CW1 and CW2, client attrition was observed within multiple Paycom departments, including the entire sales department by October 2021 ¶¶ 92–93. Thus, throughout the Class Period, Lost Clients Reports showed an increasing number of clients terminating their service with Paycom. ¶ 212. Similarly, the SaveOps Reports showed an increase in clients who were dissatisfied and at risk of ending their | |

<div align="center">4</div>

| S2 - ¶ 110 | Statement Category: §III.B.2. Customer & Revenue Retention |
|---|---|
| contract with Paycom. Both the Lost Clients Report and the SaveOps Report specified that opposition to Beti was causing the increase in the clients who had ended or were at risk of ending their service with Paycom. ¶¶ 42, 212.<br><br>2. Defendants confirmed the CWs' accounts when they reported in February 2023 that Paycom had only converted "around 50%" of *all* clients to Beti and by June 2023, purportedly just over that—a far cry from Richison's internal deadline to have *all existing* clients on Beti by the end of 2021. ¶¶ 67, 97, 146.<br><br>3. CWs 1, 2, and 4 reported that, at the time Paycom introduced Beti in July 2021, Paycom required CRRs to attempt to force all existing clients to purchase and use Beti by the end of 2021, which destroyed the CRRs' relationships with existing client accounts and caused many clients to leave Paycom starting in the second half of 2021 and continuing throughout the Class Period at an increasing rate, resulting in worsening retention rates. ¶¶ 67–69, 71–72, 92, 98.<br><br>4. On October 31, 2023, Defendant Boelte publicly admitted that Paycom was making intentional "strategic…client value decisions," later described as including forcing clients' "appropriate usage of our software [Beti]," which drove attrition of clients who were resistant to using Beti and thereby hurt Paycom's revenue growth rates then-current and future. ¶¶ 165, 168–69. This admission effectively revealed the same attitude Defendant Richison had held as early as April 2021, when Richison had stated internally, but undisclosed to investors, "if a customer doesn't want to automate their payroll by adopting Beti then we don't want them—we know what's best for them"—*i.e.*, that Defendants were willing to let clients go, thereby hurting retention, if clients did not want Beti. ¶ 56. | 2. The Individual Defendants also made frequent public statements about both Beti adoption and usage rates and Paycom's recurring revenue, demonstrating they closely tracked these two crucial metrics, and were aware of existing clients' resistance to Beti and that clients (and thereby revenues) were leaving Paycom. ¶¶ 219–21.<br><br>3. CW1 stated that Defendant Richison instructed Paycom's Turn Team, responsible for terminating the accounts of lost clients so they would not be counted as active clients for purposes of calculating the Company's annual revenue retention rate, to delay removing lost clients from the retention calculation to avoid a large hit to Paycom's publicly reported customer retention. ¶¶ 222–23.<br><br>4. Defendants in February 2024 restated Paycom's annual revenue retention rate, from 93% to 91%, attributing the change to "accelerat[ing] the point at which a client is deemed 'lost'"— thereby corroborating CW1's account Defendants were delaying removing terminated accounts. ¶¶ 223–24.<br><br>5. The Individual Defendants were motivated under their Long-Term Incentive Plan to inflate the price of Paycom stock Term Incentive Plan to inflate the price of Paycom stock throughout the Class Period by maintaining the appearance the Company's revenue retention rate remained high to meet their compensation and bonus goals. ¶¶ 226–27.<br><br>6. Beti was Defendant Richison's own idea and vision for years prior to launch, and Defendant Richison stayed close to its rollout, personally delivering mandates related to the product and devising incentives to CRRs to sell more Beti, further supporting the inference that Richison was aware that mandating Beti for all clients and Paycom's aggressive sales tactics (largely directed by him) were driving client attrition. ¶¶ 51, 204–07. |

PLFS' APP'X A

| S2 - ¶ 110 | Statement Category: §III.B.2. Customer & Revenue Retention |
|---|---|
| 5. In February 2024, Defendants admitted that existing client attrition had been underreported throughout the Class Period and restated Paycom's revenue retention rate for 2022 from 93% to 91% (representing tens of millions of dollars in revenue that was not retained) and demonstrating that forcing the adoption of Beti drove clients away. ¶¶ 115, 181–188. Notably, Defendants in February 2024 admitted that the downward revision in retention rate was due to "accelerat[ing] the point at which a client is deemed 'lost' for purposes of [Paycom's] annual revenue retention rate calculation," thereby corroborating CW1's account from during the Class Period that Richison had previously directed Turn Team employees to *delay* marking clients who terminated Paycom's services as lost. ¶¶ 102–04, 181–83.<br><br>6. In June 2024, Defendant Richison finally admitted the truth about Paycom's existing clients—that Paycom had stopped tracking existing clients' adoption rates because "they're not all keen on [adopting Beti]," raising an inference that a majority of existing clients had resisted adopting Beti from its launch in July 2021. ¶¶ 189–90. | |

PLFS' APP'X A

| S3 - ¶ 112 | | | Statement Category: §III.B.1. Client Acceptance of Beti | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | Feb. 8, 2022 | **Source:** | FY 2021 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**Samad Saleem Samana**

*Jefferies LLC, Research Division – Equity Analyst*

Great. And then maybe just a follow-up. Beti is impacting retention in a positive way. I'm curious if you can maybe update us on what the traction is in terms of getting the installed base to using Beti and how we should think about that progression in 2022.

**Chad R. Richison**

*Paycom Software, Inc. – Founder, President, CEO & Chairman of the Board of Directors*

Yes. **And so we're having a lot of success with the installed base using Beti**. I mean, internally, there is a little bit of a process change for our clients. You're moving things that you were doing after the payroll ends, the pay period ends. You're moving that to the beginning. But **we continue to have success selling Beti both into our current installed base**. And as a reminder, all new business that we've brought on since July of last year all have Beti included in its pricing and usage expectation. ¶ 112.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S3 was false and misleading when made because throughout the Class Period, at least one-half of Paycom's installed base refused to adopt or use Beti and a significant number were leaving Paycom in response to Defendants' relentless and pushy sales tactics. Thus, Paycom did not have "a lot of success with the installed base using Beti" nor "success selling Beti" to the existing client base, as evidenced by the facts alleged for S1, *supra*, at 1–3. | *See* Facts Giving Rise to Inference of Scienter for S1, *supra*, at 1–3. S3 was made on the same FY 2021 Earnings Call as S1, and therefore, no new facts giving rise to scienter arose between when these statements were issued. |

Plfs' App'x A

| S4 - ¶ 114 | | | | Statement Category: §III.B.2. Customer & Revenue Retention | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | Feb. 8, 2022 | **Source:** | FY 2021 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**Bhavin S. Shah**

*Deutsche Bank AG, Research Division – Research Analyst*

Chad, just any commentary you can provide in terms of which modules are seeing increased adoption as HR becomes more strategic with the great resignation? And then are you seeing any customers -- like are you seeing more customers come back to the table or even the size of land get bigger?

**Chad R. Richison**

*Paycom Software, Inc. – Founder, President, CEO & Chairman of the Board of Directors*

<div align="center">* * *</div>

And then as far as seeing customers come back to the table, **we're not having a lot of losses on customers, as we just talked about our retention rate going up**. When we do lose a client, though, it is -- we get a meeting with them normally pretty quick just because of the usage around their employee base. If we're looking at a DDX of 95% where employees are making 95% of all the changes into the system, that's a client that finds it difficult to leave without destroying their return on investment and all the automation that they had achieved through our products. So we have a lot of win-backs there, but I would just start off by saying we're not really losing as many as we once did. ¶ 114.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S4 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and many were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, Paycom was, in fact and contrary to Richison's statement, "having a lot of losses on customers," putting downward pressure on the Company's retention rate (rather than the rate "going up"), as evidenced by the facts alleged for S2, *supra*, at 4–6. | *See* Facts Giving Rise to Inference of Scienter for S2, *supra*, at 4–6. S4 was made on the same FY 2021 Earnings Call as S2, and therefore, no new facts giving rise to scienter arose between when these statements were issued. |

| S5 - ¶ 117 | | Statement Category: §III.B.1. Customer Acceptance of Beti | | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | Feb. 8, 2022 | **Source:** | FY 2021 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**"we continue to have a lot of success deploying Beti, and I still expect that all of our clients will be using Beti at some point."** ¶ 117.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S5 was false and misleading when made because throughout the Class Period, at least one-half of Paycom's installed base refused to adopt or use Beti and a significant number were leaving Paycom in response to Defendants' relentless and pushy sales tactics. Thus, Paycom was not having "a lot of success deploying Beti," and Richison's statement lacked any reasonable basis, as evidenced by the facts alleged for S1, *supra*, at 1–3. | *See* Facts Giving Rise to Inference of Scienter for S1, *supra*, at 1–3. S5 was made on the same FY 2021 Earnings Call as S1, and therefore, no new facts giving rise to scienter arose between these statements being issued. |

| S6 - ¶ 120 | | | Statement Category: §III.B.1. Customer Acceptance of Beti | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | May 3, 2022 | **Source:** | 2022 Q1 Earnings Call |

<table>
<tr><td colspan="2" align="center">False or Misleading Statement or Omission:</td></tr>
<tr><td colspan="2">Employee usage continues to trend higher as <b><u>more companies embrace our self-service solutions and push ownership of the data out to the employee</u></b>. Increasing employee usage is a key component of the ROI that our clients realize and we believe our employee usage strategy is a competitive advantage and a driver of our very strong growth. <b><u>Already well over 1/4 of our clients have implemented and/or [are] in the process of implementing Beti, our most advanced employee usage payroll experience to date. In less than a year, over 10,000 of our clients have embraced Beti as the right way to do payroll.</u></b> Beti is fundamentally a better way to run all payroll processes to the benefit of the employer and employees. We will continue to innovate Beti to deliver even more value to our clients, making it even more compelling. Beti is the future of payroll. ¶ 120.</td></tr>
<tr><td align="center"><b><u>Reasons Why Statement is False or Misleading:</u></b></td><td align="center"><b><u>Facts Giving Rise to Inference of Scienter:</u></b></td></tr>
<tr><td>S6 was false and misleading when made because throughout the Class Period, at least one-half of Paycom's installed base refused to adopt or use Beti and a significant number were leaving Paycom in response to Defendants' relentless and pushy sales tactics. Thus, clients were not "embrac[ing]" Beti, as evidenced by the facts alleged for S1, <i>supra</i>, at 1–3, as well as:<br><br>1. CW1 stated that, by March or April of 2022, a lot more clients were leaving Paycom as a result of the Beti mandate. ¶ 92.</td><td><i>See</i> Facts Giving Rise to Inference of Scienter for S1, <i>supra</i>, at 1–3, as well as the following facts:<br><br>1. Paycom's SaveOps, Lost Clients, and Retention Reports, which Defendants reviewed, would have reflected CW1's observations that a lot more clients were leaving Paycom by March or April of 2022. ¶ 92, 209–12.</td></tr>
</table>

PLFS' APP'X A

| S7 - ¶ 122 | | | | Statement Category: §III.B.1. Client Acceptance of Beti | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | May 3, 2022 | **Source:** | 2022 Q1 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**Mark Steven Marcon**

*Robert W. Baird & Co. Incorporated, Research Division – Senior Research Analyst*

Congratulations on the excellent results. Wondering, can you talk a little bit about the Beti conversions that you've had so far? And what sort of revenue uplift you've seen? And then what is -- what's been the change in terms of the level of client engagement and satisfaction and early reads in terms of retention trends among those clients?

**Chad R. Richison**

*Paycom Software, Inc. – Founder, President, CEO & Chairman of the Board of Directors*

<div align="center">* * *</div>

And so in answer to your question **from a retention**, absolutely, the more of a product business is used in our case, the more products that they use, the longer they stay and the happier that they are. So **we're having a lot of success getting Beti out there**. ¶ 122.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S7 was false and misleading when made because throughout the Class Period, at least one-half of Paycom's installed base refused to adopt or use Beti and a significant number were leaving Paycom in response to Defendants' relentless and pushy sales tactics. Thus, Paycom was not "having a lot of success getting Beti out," as evidenced by the facts alleged for S6, *supra*, at 10. | *See* Facts Giving Rise to Inference of Scienter for S6, *supra*, at 10. S7 was made on the same 2022 Q1 Earnings Call as S6, and therefore, no new facts giving rise to scienter arose between when these statements were issued. |

| S8 - ¶ 124 | | | Statement Category: §III.B.3. Beti's Revenue Impact | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | May 3, 2022 | **Source:** | 2022 Q1 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**Mark Steven Marcon**

*Robert W. Baird & Co. Incorporated, Research Division – Senior Research Analyst*

Chad, do you get a revenue lift on the clients that you are converting to Beti? And if so…

**Chad R. Richison**

*Paycom Software, Inc. – Founder, President, CEO & Chairman of the Board of Directors*

<u>**We do. Yes. Beti -- yes. Beti provides an incremental revenue opportunity for us.**</u> It's a -- as I said in the past, it's a nominal fee. It's 1 of 29 modules, but <u>**we do get a revenue uplift each time we sell Beti to a current client.**</u> ¶ 124.

| <div align="center">**<u>Reasons Why Statement is False or Misleading:</u>**</div> | <div align="center">**<u>Facts Giving Rise to Inference of Scienter:</u>**</div> |
|---|---|
| S8 was false and misleading when made because, unbeknownst to investors, Beti significantly cannibalized revenues from unscheduled payrolls that Paycom would otherwise collect, and Defendants' increased focusing of CRRs on selling Beti caused Paycom to lose tens of millions of dollars in forgone cross-sales revenue as CRRs were too busy trying to sell Beti. Thus, Beti did not give Paycom an "incremental" revenue opportunity nor did Paycom have a true "revenue uplift each time" Beti was sold by CRRs but, rather, Beti's sales rollout and effects netted a negative revenue impact, as evidenced by:<br><br>1. The Beti go-to-market team identified prior to the launch of Beti that one of the obvious risks was that Beti would have a negative financial impact on Paycom from lost revenues by reducing client errors that needed to be corrected with unscheduled or off-cycle payroll runs. ¶¶ 53–54.<br><br>2. CW1 and CW4 corroborated that Paycom's unscheduled revenues, which included billable corrections, were lost with Beti adoption and comprised a substantial amount of Paycom's revenues. ¶¶ 35, 54. | 1. Defendant Richison was warned by the head of the Beti go-to-market team prior to Beti's launch, *inter alia*, that: (1) Paycom's revenues would decline by reducing client errors that needed to be corrected with unscheduled or off-cycle payroll runs, as corroborated by CW4; and (2) if CRRs were made to focus on selling Beti, they would not have enough time for cross-selling any other of Paycom's products. ¶¶ 194–98. Nevertheless, Richison mandated that CRRs spend increasing amounts of time selling and implementing Beti, taking away time for generating cross-sales revenue. ¶ 73, 77.<br><br>2. Defendants admitted to analyzing "months of data" of Beti usage to understand Beti's impact, and thus would have been aware that the data showed Beti was cannibalizing Paycom's unscheduled revenues from billable corrections, creating a strong inference that Defendants knew throughout the Class Period that increased Beti usage was resulting in a substantial cannibalization of Paycom's revenues. ¶¶ 214–15.<br><br>3. Defendant Richison admitted at the end of the Class Period, on October 31, 2023, that Beti significantly cannibalized Paycom's revenue ¶ 167. |

<div align="center">12</div>

| S8 - ¶ 124 | Statement Category: §III.B.3. Beti's Revenue Impact |
|---|---|
| 3. Defendant Richison admitted at the end of the Class Period, on October 31, 2023, that Beti was resulting in "lower related revenue recognized by Paycom" and Defendant Boelte admitted that same day that "increases in Beti usage" had "eliminated certain billable items, which is cannibalizing a portion of [Paycom's] unscheduled revenues." ¶¶ 166–67.<br><br>4. The Beti go-to-market team also identified prior to Beti's launch that CRRs were already busy with their duties in generating revenues through cross-selling, and therefore that CRRs would not have time to take on also selling Beti to existing clients once it launched. ¶ 57.<br><br>5. Upon introducing Beti in July 2021, Defendants required CRRs to focus their time on selling Beti to all existing customers, without exception and, as described by CW2 and corroborated by CW4, this made it impossible to create sales proposals that did not include Beti, thereby reducing CRRs' time and ability to cross-sell revenue-generating, non-payroll products. ¶¶ 73, 77.<br><br>6. In 2022, upwards of 50% to 60% of CRRs' time that was once exclusively dedicated to cross-selling became diverted to Beti implementation, in order to meet goals for Beti-related metrics Defendants imposed on CRRs. ¶ 87. Indeed, when Defendant Richison later admitted on August 1, 2023 that CRRs' cross-selling revenues were down by about $20 million by the middle of the fiscal year because Paycom had required them to focus on "converting our client base to Beti," Richison clarified that Paycom "didn't just start doing this," adding that "[w]e really started doing this end of last year"— *i.e.*, in the second half of 2022. ¶¶ 142, 159.<br><br>7. Defendant Boelte further admitted on October 31, 2023 that Paycom's decision to forgo CRR cross-selling revenues to focus more on Beti sales and implementation had been an | 4. Richison, himself, admitted having directed the CRRs to focus on Beti adoption and usage rather than cross-selling, and thus would have been aware that limiting cross-selling negatively affected cross-sales revenues. ¶¶ 205–06. Indeed, at the end of the Class Period, Defendants admitted to making the "strategic revenue decision[]" to have CRRs focus on Beti rather than making cross-sales, and that this practice was "not going to change" for the foreseeable future. ¶¶ 170–72. This was despite having admitted months prior, in August 2023, that diverting CRRs' time from cross-selling to focus on Beti had caused Paycom to miss out on up to $20 million in cross-sales revenue by midyear 2023, losses which would have increased through the second half of the year given Defendants' refusal to change course. ¶¶ 159–62, 179. |

| S8 - ¶ 124 | Statement Category: §III.B.3. Beti's Revenue Impact |
|---|---|
| intentional "strategic revenue decision[]" that would continue indefinitely. ¶¶ 165–66, 168, 170–71. Considering that Defendant Richison had maintained from the outset that "everybody" would be on Beti, Defendant Boelte's October 2023 admission also indicated that this had been Defendants' strategy since they handed down the Beti mandate in June 2021. ¶ 66.<br><br>8. In December 2023, Defendant Richison admitted that focusing CRRs on Beti sales and implementation was resulting in CRRs "selling a lot less…than they've ever done in the past." ¶¶ 179–80. | |

14

| S9 - ¶ 126 | | Statement Category: §III.B.2. Customer & Revenue Retention | | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | May 3, 2022 | **Source:** | 2022 Q1 Earnings Call |

<table>
<tr><td colspan="2" align="center">False or Misleading Statement or Omission:<br><br>"<u>But with that said, this one time I will share with you that our current retention number when compared with the same period last year is either equal to or improved</u>." ¶ 126.</td></tr>
<tr><td align="center"><u>**Reasons Why Statement is False or Misleading:**</u></td><td align="center"><u>**Facts Giving Rise to Inference of Scienter:**</u></td></tr>
<tr><td>S9 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and many were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, Paycom's retention rate was not "equal to or improved" from the FY 2021 rate, but rather lower due to client attrition, as evidenced by the facts alleged for S2, *supra*, at 4–6, as well as:<br><br>1. CW1 stated that, by March or April of 2022, a lot more clients were leaving Paycom as a result of the Beti mandate, which per CW1 was compounded by poor customer service. ¶ 92.</td><td>*See* Facts Giving Rise to Inference of Scienter for S2, *supra*, at 4–6, as well as the following facts:<br><br>1. CW1 said Paycom was losing a lot more clients by March or April of 2022, which Defendants would have been aware of through SaveOps, Lost Clients, and Retention Reports that Defendants admittedly reviewed. ¶¶ 92, 212. Indeed, Richison admitted reviewing Retention Reports, and CWs 2 and 3 corroborated that Defendants received SaveOps and Lost Clients reports on a weekly basis, which CW4 confirmed were very important reports within the Company. ¶¶ 42–45, 209–10.</td></tr>
</table>

| S10 - ¶ 130 | | | Statement Category: §III.B.3. Beti's Revenue Impact | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | August 2, 2022 | **Source:** | 2022 Q2 Earnings Call |

<table>
<tr><td colspan="2" align="center">False or Misleading Statement or Omission:</td></tr>
<tr><td colspan="2">"as far as the opportunity, <b>that upselling into our client base has with Beti, it is incremental increase in revenue opportunity for us, so it's accretive to that profile</b>." ¶ 130.</td></tr>
<tr><td align="center"><b><u>Reasons Why Statement is False or Misleading:</u></b></td><td align="center"><b><u>Facts Giving Rise to Inference of Scienter:</u></b></td></tr>
<tr><td>S10 was false and misleading when made because, unbeknownst to investors, Beti significantly cannibalized revenue from unscheduled payroll runs that Paycom would otherwise collect, and Defendants' increased focusing of CRRs on selling Beti caused Paycom to lose tens of millions of dollars in forgone cross-sales revenue. Thus, having CRRs "upsell[]" Beti, and the rollout of Beti itself, were not "accretive" to Paycom's revenue profile, but rather, Beti's sales rollout and effects netted a negative revenue impact, as evidenced by the facts alleged for S8, <i>supra</i>, at 12–14.</td><td><i>See</i> Facts Giving Rise to Inference of Scienter for S8, <i>supra</i>, at 12–14.</td></tr>
</table>

PLFS' APP'X A

| S11 - ¶ 133 | | | Statement Category: §III.B.2. Customer & Revenue Retention | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | November 1, 2022 | **Source:** | 2022 Q3 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

"**No, I can't say that we've seen any changes**." ¶ 133.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S9 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and many were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, there were in fact "changes" (negative ones) occurring to Paycom's retention rate, as evidenced by the facts alleged for S9, *supra*, at 15, as well as: | *See* Facts Giving Rise to Inference of Scienter for S9, *supra*, at 15, as well as the following facts: |
| 1. CW1 learned through the Turn Team and Paycom's Admin B2 System that the Company was seeing "tons of clients" leaving by late 2022, and the number grew "every day" into 2023. ¶¶ 101–03. | 1. Despite seeing "tons of clients" leaving Paycom by late 2022 and growing "every day" into 2023, CW1 understood after flagging the issue up Defendant Boelte's reporting chain, that Defendant Richison had instructed the Turn Team to delay in marking clients as lost so as to avoid a large hit to Paycom's client count (and therefore, retention rate). ¶¶ 101–02. Defendants later publicly admitted to this practice in February 2024 when they revised down Paycom's FY 2022 annual revenue retention rate, explaining that the lower rate was due to having to "accelerate the point at which a client is deemed 'lost' for purposes of our annual revenue retention rate calculation." ¶¶ 181–83. |
| | 2. CW1 observed through the Admin B2 system, to which CW1 said Defendants both had access, that many lost clients' accounts remained active from late 2022 into 2023. ¶¶ 102–03, 223. |

| S12 - ¶ 136 | | | | Statement Category: §III.B.2. Customer & Revenue Retention | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | November 30, 2022 | **Source:** | 2022 Credit Suisse Conference |

<div align="center">False or Misleading Statement or Omission:</div>

**Kevin Damien McVeigh**

*Crédit Suisse AG — Research Division*

And do you think -- because one of the things you've really seen a nice improvement is your retention rates. I think you're up around 94% now, 91%, 92% couple of years ago. Is that Beti? Is that sales because it's, again, just incredibly impressive retention rates? And does that continue to kind of march forward here?

**Chad R. Richison**

*Paycom Software, Inc. — Founder, President, CEO & Chairman of the Board of Directors*

Yes. I mean **you always have a certain amount that you lose from buy, sold and merged. But I definitely think you have the opportunity to continue to increase retention.** Ours is a situation with how we measure it, it wouldn't go over 100%. So I wouldn't say we would get to 100% since it can't go over 100%, but I would say that there's still room. ¶ 136.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S12 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and many were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, Paycom was not "continu[ing] to increase retention," as evidenced by the facts alleged for S11, *supra*, at 17. | *See* Facts Giving Rise to Inference of Scienter for S11, *supra*, at 17. |

| S13 - ¶ 140 | Statement Category: §III.B.3. Beti's Revenue Impact | | |
|---|---|---|---|
| **Speaker(s):** Chad Richison | **Date:** December 7, 2022 | **Source:** | 2022 Barclays Conference |

**False or Misleading Statement or Omission:**

From a percentage of our new business revenue, the overwhelming majority has always come from new logo adds just because of the size of the revenue associated with when you first land versus what you upsell to them later. But the mix has always been -- **we've always had some upsells as well. It's been measurable as well. And so I'm just saying it's been very consistent** with the exception of the 6 months where we had ACA where we got every right away. **Other than that, it's been very consistent**, again, overwhelming majority being new logo add. ¶ 140.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S13 was false and misleading when made because, unbeknownst to investors, Defendants' mandate that CRRs focus on selling Beti caused Paycom to lose tens of millions of dollars in forgone cross-sales revenue. Thus, Paycom was not experiencing "very consistent" cross-sales revenue, its cross-sales revenue was declining, as evidenced by: | 1. Defendant Richison was warned by the head of the Beti go-to-market team prior to Beti's launch, *inter alia,* that: if CRRs were made to focus on selling Beti, they would not have enough time for cross-selling any other of Paycom's products. ¶¶ 194–98. Nevertheless, Richison mandated that CRRs spend increasing amounts of time selling and implementing Beti, taking away their time for generating cross-sales revenue. ¶ 73, 77. |
| 1. The Beti go-to-market team identified prior to Beti's launch that CRRs were already busy with their duties in generating revenues through cross-selling, and therefore that CRRs would not have time to take on also selling Beti to existing clients once it launched. ¶¶ 57. | 2. Richison, himself, admitted having directed the CRRs to focus on Beti adoption and usage rather than cross-selling, and thus would have been aware that forcing CRRs to focus on selling Beti severely limited CRR's ability to generate cross-sales revenues. ¶¶ 205–06. Indeed, at the end of the Class Period, Defendants admitted to making the "strategic revenue decision[]" to have CRRs focus on Beti rather than making cross-sales, and that this practice was "not going to change" for the foreseeable future. ¶¶ 170–72. This was despite having admitted months prior, in August 2023, that diverting CRRs' time from cross-selling to focus on Beti had caused Paycom to lose at least $20 million in cross-sales revenue by midyear 2023, losses which likely increased through the second half of the year given Defendants' refusal to change course. ¶¶ 159–62, 179. |
| 2. Upon introducing Beti in July 2021, Defendants required CRRs to focus their time on selling Beti to all existing customers, without exception and, as described by CW2 and corroborated by CW4, made it impossible to create sales proposals that did not include Beti, thereby reducing CRRs' time and ability to cross-sell revenue-generating, non-payroll products. ¶¶ 73, 77. | |
| 3. In 2022, upwards of 50% to 60% of CRRs' time that was once exclusively dedicated to cross-selling became diverted to Beti implementation, in order to meet goals for Beti-related metrics Defendants imposed on CRRs. ¶ 87. | |

PLFS' APP'X A

| S13 - ¶ 140 | Statement Category: §III.B.3. Beti's Revenue Impact |
|---|---|
| 4. When Defendant Richison admitted on August 1, 2023 that CRRs' cross-selling revenues were down by at least $20 million by the middle of the fiscal year because Paycom had required CRRs to focus on "converting our client base to Beti," Richison clarified that Paycom "didn't just start doing this," adding that "[w]e really started doing this end of last year"—*i.e.*, in the second half of 2022. ¶¶ 142, 159.<br><br>5. Defendant Boelte admitted on October 31, 2023 that Paycom's decision to forgo CRR cross-selling revenues to focus on Beti sales and implementation had been an intentional "strategic revenue decision[]" that would continue indefinitely. ¶¶ 165–66, 168, 170–71. Considering that Defendant Richison had maintained from the outset that "everybody" would be on Beti, Defendant Boelte's October 2023 admission also indicated that this had been Defendants' strategy since they handed down the Beti mandate in June 2021. ¶ 66.<br><br>6. In December 2023, Defendant Richison admitted that focusing CRRs on Beti sales and implementation was resulting in CRRs "selling a lot less…than they've ever done in the past." ¶¶ 179–80. | |

| S14 - ¶ 144 | | | | Statement Category: §III.B.2. Customer & Revenue Retention | |
|---|---|---|---|---|---|
| **Speaker(s):** | Craig Boelte | **Date:** | February 7, 2023 | **Source:** | FY 2022 Earnings Call |

<table>
<tr><td colspan="2" align="center">False or Misleading Statement or Omission:<br><br>"<b>Paycom's annual revenue retention rate in 2022 was 93%, which was consistent with our recent 4-year average of 93% and up more than 200 basis points from the prior 4-year period average of 91%.</b>" ¶ 144.</td></tr>
<tr><td align="center"><b><u>Reasons Why Statement is False or Misleading:</u></b></td><td align="center"><b><u>Facts Giving Rise to Inference of Scienter:</u></b></td></tr>
<tr><td>S14 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, Paycom's annual revenue retention rate in 2022 was not 93%, nor was it consistent with Paycom's rolling 4-year average, as evidenced by the facts alleged for S12, <i>supra</i>, at 18.</td><td><i>See</i> Facts Giving Rise to Inference of Scienter for S12, <i>supra</i>, at 18.</td></tr>
</table>

| S15 - ¶ 147 | | | Statement Category: §III.B.3. Beti's Revenue Impact | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | February 7, 2023 | **Source:** | FY 2022 Earnings Call |

<div align="center">False or Misleading Statement or Omission:</div>

**Joshua Christopher Reilly**

*Needham & Company, LLC — Research Division*

If you look at the growth expectations for 2023 here, how do you think about the mix of growth from new customers versus existing? As we know existing customers, while smaller historically in net new bookings, their growth has increased in the last couple of years. And we're seeing some different trends with different software vendors.

**Chad R. Richison**

*Paycom Software, Inc. — Founder, President, CEO & Chairman of the Board of Directors*

Yes. We're -- ours is going to primarily come from new logo ads when you just look at the size of revenue that we need to grow by in order to continue to hit our objectives. And so first prize is going to be new logo adds. We don't really have a lot to call out on pace per control growth from that perspective. But new logo ads is going to be primary for us. **We've always had a healthy upsell to current clients.** It's just been at a much smaller level than what new logo ads are. **And it's been consistent. Our upsells to current clients as a percentage has been consistent each year with the exception of the year we had ACA**. ¶ 147.

| <div align="center">**Reasons Why Statement is False or Misleading:**</div> | <div align="center">**Facts Giving Rise to Inference of Scienter:**</div> |
|---|---|
| S15 was false and misleading when made because, unbeknownst to investors, Defendants' increasing focus on CRRs to sell Beti caused Paycom to lose tens of millions of dollars in forgone cross-sales revenue. Thus, Paycom was not experiencing "healthy upsell" rates nor was cross-selling "consistent" with prior years, as evidenced by the facts alleged for S13, *supra*, at 19–20. | *See* Facts Giving Rise to Inference of Scienter for S13, *supra*, at 19–20. |

| S16 - ¶ 150 | | | Statement Categories: §III.B.1. Client Acceptance of Beti §III.B.2. Customer & Revenue Retention | | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | February 7, 2023 | **Source:** | FY 2022 Earnings Call |

False or Misleading Statement or Omission:

**Bryan C. Bergin**

*Cowen and Company, LLC, Research Division – MD & Analyst*

I wanted to follow up on retention first. So I heard the comments about Beti clients being higher and the relative stability from prior years. But just as we think about the year-on-year downtick here, can you talk about -- is this larger client churn? Or is it a lot of churn among smaller clients? Just trying to understand that dynamic.

**Chad R. Richison**

*Paycom Software, Inc. – Founder, President, CEO & Chairman of the Board*

\* \* \*

So you've got a couple of things at play. And then also, you've got some rounding at play, but all that's to say is **93% from what I've seen still up there, an industry-leading number.** And I do expect, again, with clients that have Beti, I mean we're running at a 99% type retention rate with them. So it's a little bit different there. **And as we continue to convert our current client base over to Beti, we expect to have some gains in that.** ¶ 150.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S16 was false and misleading when made because throughout the Class Period, at least one-half of Paycom's installed base refused to adopt or use Beti and a significant number were leaving Paycom in response to Defendants' relentless and pushy sales tactics. Thus, Paycom was not "continu[ing] to convert [its] current client base over to Beti," and Defendants lacked any reasonable basis for their statements, as evidenced by the facts alleged for S6, *supra*, at 10, and S12, *supra*, at 18. | *See* Facts Giving Rise to Inference of Scienter for S6, *supra*, at 10, and for S12, *supra*, at 18. |

Plfs' App'x A

| S17 - ¶ 154 | | | | Statement Category: §III.B.2. Customer & Revenue Retention | |
|---|---|---|---|---|---|
| **Speaker(s):** | Chad Richison | **Date:** | May 2, 2023 | **Source:** | 2023 Q1 Earnings Call |

**False or Misleading Statement or Omission:**

Yes. So we provide retention at the end of each year. It fluctuates quarter-to-quarter. I kind of said on the last call, we have the have and have-nots here at Paycom, and that was related to Beti. Our Beti retention rate last year was better than 99% of anybody that had Beti. So **I expect our retention to remain strong and even increases -- increase a larger percentage as more clients use the product** the right way to achieve the maximum ROI that's available to them.

But yes, for retention, I've also said in the past, typically, regardless of -- I'm not comparing it from last first quarter to this first quarter, but typically, for -- especially for larger clients of any of our competitors, retentions oftentimes starts off lower the first of the year and continues to increase throughout the year because less clients usually leave in the fourth quarter, if you will. But **nothing to call out special in the first quarter. I would just say we've been very stable**, and the companies that use Beti do better. ¶ 154.

| **Reasons Why Statement is False or Misleading:** | **Facts Giving Rise to Inference of Scienter:** |
|---|---|
| S17 was false and misleading when made because approximately one-half of Paycom's existing clients did not want to adopt Beti, and many were angry at Paycom's CRRs for trying to force Beti on them, driving clients to leave Paycom, thereby reducing revenue and client retention rates. Thus, Paycom's retention rate was not "remain[ing] strong" nor "increas[ing]," it was doing the opposite and decreasing, as evidenced by the facts alleged for S12, *supra*, at 18. | *See* Facts Giving Rise to Inference of Scienter for S12, *supra*, at 18. |

24